OLEN CORPORATION ET AL., APPELLANTS, *v.* FRANKLIN COUNTY BOARD OF ELECTIONS ET AL., APPELLEES.

190

(No. 87AP-998 — Decided January 26, 1988.)

*Lucas, Prendergast, Albright, Gibson & Newman, Robert E. Albright* and *James B. Harris,* for appellants.

*Michael Miller,* prosecuting attorney, *Harland H. Hale, Anthony J. Celebrezze, Jr.,* attorney general, *Andrew I. Sutter, Jonathan Marshall* and *Steven J. Edwards,* for appellees.

WHITESIDE, J. Plaintiffs appeal from a judgment of the Franklin County Court of Common Pleas and raise five assignments of error as follows:

"A. The trial court erred to the prejudice of appellants by applying a subjective, rather than objective test to determine whether or not the description in the referendum petition was ambiguous, inaccurate, contained material omissions or tended to mislead or confuse the average person.

"B. The trial court erred to the prejudice of appellants by finding that the inaccuracy and ambiguity in the referendum petition was *de minimus* and not misleading or confusing and that there was 'substantial compliance' with R.C. 303.12.

"C. The trial court erred to the prejudice of appellants in admitting oral testimony and other evidence concerning the hearing before the Franklin County Commissioners on August 5, 1987, which evidence was offered by the appellees to explain or vary the certified resolution of the Franklin County Commissioners previously stipulated into evidence.

"D. The trial court erred as a matter of law to the prejudice of appellants by failing to hold the petition invalid for failure to comply with R.C. 303.12 and 3501.38. Further, the trial court erred to the prejudice of appellants in holding that appellees had substantially complied with those statutes and that substantial compliance was sufficient.

"E. The trial court erred as a matter of law and to the prejudice of appellants by refusing to grant appellants' request for a stay or an injunction pending appeal under Rule 62(B) of the Ohio Rules of Civil Procedure."

Plaintiff, Olen Corporation, applied for rezoning of its property on which it has operated a sand and gravel quarry for approximately twenty years. The application was filed on

May 15, 1987, seeking the rezoning of 172.89 acres from a rural district to an excavation and quarry district in Brown Township, Franklin County, Ohio. Eventually, the zoning application came on for hearing before the Board of County Commissioners of Franklin County on August 5, 1987, and the commissioners adopted a resolution describing the application for rezoning and the description therein of the property sought to be rezoned and stating that the Mid-Ohio Regional Planning Commission had recommended the application be conditionally approved subject to submission of a reclamation plan and that the Franklin County Rural Zoning Commission had recommended that the application for rezoning be disapproved because of concerns of neighbors in the area. The commissioners in the resolution resolved that:

"Section 1. That the area to be rezoned is that area as shown upon the Rehabilitation Plan date [*sic*] June 3, 1987, prepared for the applicant by James Burkart Associates, Inc., and the application is amended to rezone approximately 156.37+ acres bounded on the east by the dotted line shown as 'seeding limit' upon said Rehabilitation Plan and bounded in all other directions by the original application boundaries.

"Section 2. That the Franklin County Commissioners unanimously amend rezoning request #87-11 from the approximately 172.89 acres to 156.37 acres as presented in the Rehabilitation Plan. The Rehabilitation Plan shall be a matter of Record and shall become a part of this Resolution and is attached hereto.

"Section 3. That the action of the Franklin County Rural Zoning Commission be and it is hereby *overturned* and the amended application of Olen Corporation; 2709 Amity Road, Hilliard, Ohio being application no. 87-11,

as amended in Section 2 above, be and it hereby is *granted.*" (Emphasis *sic.*)

This resolution was adopted on August 5, 1987. Six days later, on August 11, 1987, a petition titled "Petition for Zoning Referendum" consisting of fifteen part petitions was filed with the Franklin County Commissioners requesting that the subject resolution be placed on the ballot for approval or rejection of electors pursuant to R.C. 303.12. The petition specifically requested that the matter be submitted to a special election to be held on November 3, 1987, and at the same time as the next primary or general election.

The petition, however, is titled "Petition for Zoning Referendum" and commences with the words:

"On a zoning amendment resolution of the Board of County Commissioners of Franklin County, Ohio, Resolution No. 754-87, entitled Resolution to Amend the Zoning Resolution and Maps of Franklin County, Ohio, Brown Township, Case No. 87-11, as amended, adopted August 5, 1987, based upon the application of the Olen Corporation to rezone a tract of land contained [*sic*] 172.89 acres bounded by Big Darby Creek on the west, Big Darby Creek and Beech Road on the north, Amity Road on the east, and 24.6555 acre tract owned by Bradley Lake Partnership on the south, in Brown Township, Franklin County, Ohio, from its current R-Rural Zoning District to EQ-Excavation and Quarry Zoning District."

At the bottom of the petition, beneath the statement of the circulator, and in all capital letters, these letters not being noticeably darker than most of the other letters in the petition, appears the language required by R.C. 303.12 and 3501.38.

The board of county commissioners timely referred the referendum petition to the board of elections,

which, on September 4, 1987, deadlocked in its determination as to whether to certify and submit the issue raised by the referendum petition to the voters of the unincorporated area of Brown Township. Plaintiffs filed a protest as to the form and content of the petition with the board of elections on September 10, 1987. On September 18, 1987, the board of elections again deadlocked on the issue. The deciding vote was cast by the Secretary of State of October 6, 1987, in accordance with statutory procedure, the Secretary of State determining to certify and submit the issue to the voters for the reasons expressed in a decision issued by him.

Thereafter, plaintiffs brought this action seeking an injunction to enjoin the board of county commissioners and board of elections from submitting the issue to the voters of Brown Township.

The matter was tried to the common pleas court with the evidence consisting primarily of a stipulation of the parties, but with some additional limited testimony. The trial court denied the injunction, issuing a written decision explaining the basis for the denial. As to plaintiffs' contention that the petition for referendum erroneously and inaccurately described the property proposed to be rezoned, the common pleas court held that there was confusion as to the exact area being rezoned as a result of the amendment ordered by the county commissioners, and that because of "the short time limit" for the filing of a referendum petition "the opponents of the rezoning had precious little time to wait for a legal description"; and that the opponents (preparers of the petition) "used the very description the proponents of the rezoning used in the original application." The court then alluded to testimony of some witnesses who said they were not confused or misled by the description and the absence of testimony that someone

was actually misled, and concluded "to the extent that there is any inaccuracy in the descriptions of the Referendum Petition, it is *de minimus* and not misleading or confusing to Brown Township residents." The court further found that the falsification warning on the petitions constitutes "substantial compliance" with R.C. 303.12 and 3501.38.

These are the two basic issues raised upon appeal, namely, whether the petition accurately describes the rezoning resolution as required by R.C. 303.12, and whether the petition contained a falsification warning complying with the requirements of R.C. 303.12 and 3501.38.

The trial court refused to grant either a stay or a temporary injunction, and this court likewise refused to grant an injunction pending appeal restraining the holding of the election during the pendency of this appeal. We understand that such an injunction has been issued by the Supreme Court and that the election was held but that the votes have not yet been counted because of that injunction.

Also apparent from the zoning application, the proposed rezoning would not change the use of at least a substantial portion of the property sought to be rezoned, since the application states, "[t]his land has been mined for sand and gravel under letters from the Rural Zoning Commission dated January 25, 1966, and April 1, 1970 and Zoning Compliance Certificates Nos. 3645 and 5399; the proposed use is continuation of the excavation of sand and gravel and mining." At another point, the application states, "[t]he proposed zoning and development is in harmony with the existing and probable future land use character of the vicinity, as evidenced by the fact that the proposed use for excavation of sand and gravel and mining is a continuation of the present use which has been in effect since the time set forth

in Item B-1 above." The application is in evidence, and no one has disputed herein the accuracy of the statements made in the application for rezoning with respect to present use of the property sought to be rezoned.

The first two assignments of error relate to the issue of whether the description in the referendum petition was ambiguous and misleading. As the trial court correctly noted, R.C. 303.12 does not specifically require that the referendum petition contain a description of the property sought to be rezoned; however, R.C. 303.12 does require that the petition contain "a brief summary" of the contents of the zoning proposal which in the petition form set forth in the statute is described as "brief summary of the proposal." Here, the referendum petition accurately described the original application for rezoning, but did not accurately describe the proposal as amended by order of the commissioners from one hundred seventy-two acres to one hundred fifty-six acres. The error in the referendum petition is not just a matter of acreage, but instead involves the location of the boundaries. The referendum petition states that the area sought to be rezoned is bounded on the north by Big Darby Creek and Beech Road and on the east by Amity Road. The map attached to the subject resolution as well as testimony at the trial, indicates that, in fact, the area to be rezoned, as approved by the commissioners pursuant to the amendment made by them, is neither bounded on the north by Beech Road nor on the east by Amity Road. Instead, that portion of the northern boundary not being Big Darby Creek is a line essentially parallel to and several hundred feet south of Beech Road. Likewise, the east boundary is at no point Amity Road, but instead is a line two or more hundred feet west of Amity Road.

Notwithstanding this discrepancy, the trial court found the inaccuracy in the descriptions to be *de minimus* and not misleading or confusing, apparently predicated upon the absence of testimony that anyone was misled, the trial court noting that fact, as well as the fact that two township residents testified they were not confused or misled by the description and that they knew of no one who was, since there is only one sand and gravel mining operation in Brown Township. However, the test to be applied is an objective test, not a subjective test. The determination of whether the statute has been complied with is to be made from the petition itself, coupled with evidence of the actual existing circumstances, rather than by the testimony of witnesses as to their personal beliefs about the petition or its effect, either as to themselves or their acquaintances. Application of the subjective test, apparently utilized by the trial court, would require calling every Brown Township elector as a witness before it could be determined that no one was misled. The issue, however, is not whether someone was in fact misled, but rather whether the language itself coupled with the actual existing circumstances is misleading to the average voter utilizing an objective standard.

Viewing the description in light of the evidence of the surrounding circumstances, both from the map and from the oral testimony, the only conclusion that can be reached is that there was a substantial deviation between the proposal as adopted by the county commissioners and that described in the referendum petition. However, there was no discrepancy between the description or summary of the proposal in the referendum petition and the original application for rezoning made by plaintiffs.

Thus, the first question to be answered is whether the language in R.C. 303.12(H), referring to "a brief summary" of the "amendment pro-

posal," refers to the original zoning application made by the property owner or to the resolution of the county commissioners granting the requested rezoning. Since the commissioners may, and in this case did, amend the original zoning application before approving it, and since the referendum will be upon the question of whether the resolution shall take effect (including the amendment), the "brief summary" necessarily must be of the proposal to amend the zoning resolution either as adopted by the resolution of the board of county commissioners or as denied by that board. The first sentence in the second paragraph of R.C. 303.12(H) providing for the referendum refers to the "amendment adopted by the board" rather than to the application for rezoning.

The referendum petition does accurately describe the zoning application (rather than the "amendment adopted by the board") although the petition does refer to the case number of the zoning resolution including the words "as amended" and next refers to the adoption date of the resolution by the county commissioners. The petition then refers to the "application of the Olen Corporation to rezone a tract of land contained [sic] 172.89 acres" following which is set forth the description of the original application which did include the 172.89 acres. When, however, the board of county commissioners amended the application to include only the 156.37 acres, the commissioners also noted that the area being rezoned is "bounded on the east by the dotted line shown as 'seeding limit' " rather than by Amity Road as set forth in the zoning petition.

The precise issue involved herein was also involved in *Shelly & Sands, Inc.* v. *Franklin Cty. Bd. of Elections* (1984), 12 Ohio St. 3d 140, 12 OBR 180, 465 N.E. 2d 883. In the *per curiam*

opinion in that case, the Supreme Court held the following summary of the zoning proposal to be confusing and ambiguous:

" '* * * [A] change of zoning for a tract of land containing approximately 1.603 acres, being a portion of a tract containing 105.96 acres, situated in a northwest quadrant of Rohr and Lockbourne Roads, * * * for the use in the production of asphaltic concrete and a continuation of sand and gravel quarry operation.' " *Id.* at 141, 12 OBR at 180-181, 465 N.E. 2d at 884.

The court noted that "the summary failed to inform the reader that operation of the entire 105.96 acre tract of land as a commercial sand and gravel quarry would continue, irrespective of the results of the referendum, and that the only zoning change sought * * * was that which would allow the placement of an asphaltic batch plant on a 1.603 acre tract * * *." *Id.* at 142, 12 OBR at 181, 465 N.E. 2d at 885. The Supreme Court noted that such language conveys to the signer of the petition that the electors would be given an opportunity to determine whether use of the land for commercial sand and gravel operation should be continued. The additional language of the *Shelly & Sands* summary, quoted *supra*, was relied upon by the Supreme Court as creating ambiguity.

The referendum petition herein is at least as misleading as that involved in *Shelly & Sands, supra*, if not more misleading. The referendum petition would lead the signer to believe that if the zoning change is approved, quarry operations would be permitted on the parcel from Amity Road westward, whereas, in fact, the quarry limits would be several hundred feet west of Amity Road. The evidence indicates that Amity Road is closer to the properties of residents in Brown Township than is a line several hundred feet west

of Amity Road. Using an objective standard, an elector would be misled into believing that the sixteen acres deleted by the commissioners' amendment would instead be rezoned and available for quarry use.

Additionally, although little evidence was presented on the issue, the referendum petition would lead the average casual reader to believe that a change in use might occur since the property was rezoned from R-Rural Zoning District to EQ-Excavation and Quarry Zoning District. The extent, if any, of a change of use is unclear from the evidence herein, although we assume that there might be some expansion of the existing quarry operation if the one hundred fifty-six acres is rezoned. However, the zoning application referred to above notes that the land has been mined for sand and gravel for many years and that the "proposed use" is a continuance of that use for excavation of sand and gravel and mining. Thus, the sand and gravel quarry and mining operation will continue upon most, if not all, of the land involved regardless of the outcome of the referendum, there being no contention herein that the use by plaintiffs of the land for that purpose is other than a legal nonconforming use. Such issue is neither raised nor determined herein, but since it is not and since the use has continued for many years, the only inference in this case is that the use will continue irrespective of whether the rezoning is approved, irrespective of whether the referendum is held and irrespective of its results.

Nevertheless, we are unable to distinguish this case from *Shelly & Sands* insofar as ambiguity is concerned. The language here appears to be more ambiguous, but most certainly is no less ambiguous, than that involved in *Shelly & Sands*. Unfortunately, the trial court apparently made its factual determination upon a supposition that a subjective rather than an objective standard should be utilized. Accordingly, the first two assignments of error labeled A and B are well-taken.

By the third assignment of error, plaintiffs contend that the trial court erred in admitting oral testimony and other evidence concerning the hearing before the Franklin County Board of County Commissioners. We agree that such evidence had little bearing upon the issues before the trial court since there appears to be no question but that the resolution was adopted by the board of county commissioners, being signed by them. Defendants contend that the evidence was admissible because it tended to show "confusion and intentional misconduct" giving rise to discrepancies in the acreage and as to the date the resolution was actually signed. The trial court's finding does not substantiate this basis for admission of the testimony. Rather, the trial court relied upon the fact that the description in the referendum petition is the same as that on the zoning application, that there was discussion concerning amending the application, and that "confusion reigned as to the exact area being finally rezoned," coupled with the trial court's erroneous assumption that only a short time existed within which the referendum petition was required to be prepared, signed and filed. The evidence as to what occurred at the hearing might be admissible and pertinent, if it were intended to show that the zoning resolution was actually signed or entered on a date different from that appearing on its face, which would be pertinent only if the referendum petitions had not been timely filed. Here, they not only were timely filed, but it is stipulated that the referendum petition was filed only six days after the hearing before the coun-

ty commissioners, whereas R.C. 303.12(H) permits a referendum petition to be filed within thirty days after the adoption of the resolution.

Obviously, there was some confusion over the extent of the rezoning created during the hearing before the county commissioners. However, the important aspect of any legislative-type procedure is not confusion created during the legislative process of receiving information and debate and adoption of the legislative act, but instead the adoption of the act itself. As to that which was adopted, the commissioners referred to a specific plan or map called a "rehabilitation plan" and indicated that that plan set forth the area to be rezoned which was reduced to a one hundred fifty-six acre tract being bounded on the east by the line shown as "seeding limit" rather than by Amity Road as indicated on the original zoning application. The resolution specifically required that the rehabilitation plan be made a matter of record and be attached to the resolution and become a part thereof. The resolution was signed by all three county commissioners, and cannot be impeached by testimony of statements made during the hearing prior to the adoption of the resolution by the commissioners affixing their signatures thereto. If the resolution did not accurately reflect the action of the board of county commissioners, that board could amend the resolution to clarify any errors. There is no indication that the board so found, much less took such action.

The trial court commented and defendants contend that they had a very short time within which to file the referendum petition. They do not explain why they did not have the full thirty days available under R.C. 303.12(H) to file referendum petitions, but instead contend that they had only nine days within which to gather and file the referendum petition because of the provision of R.C. 3501.02 that an issue cannot be voted upon at an election unless certified to the board of elections not less than seventy-five days before the day of the election. The trial court apparently was under the same erroneous impression. However, under such a theory, it would be within the power of the board of county commissioners to obviate any referendum upon zoning issues by adopting the resolution between thirty and seventy-five days before the next general or special election.

Essentially, defendants contend there is a moratorium on referendum petitions on zoning issues with respect to resolutions adopted between twenty-nine and seventy-five days before an election, and a reduced time period for filing referendum petitions with respect to those filed between seventy-five and one hundred five days prior to the primary or general election. We find no such statutory intent.

R.C. 303.12(H) and 3501.02 must be read *in pari materia* so as to effectuate the purpose of both. Under R.C. 303.12(H), persons seeking a referendum petition upon a zoning resolution adopted by a board of county commissioners have thirty days after the adoption of the resolution within which to file a referendum petition. There is nothing in R.C. 3501.02 reducing this thirty-day period. However, R.C. 3501.02 provides that the issue must be certified to the board of elections (not filed with the county commissioners) not less than seventy-five days before an election in order to be placed upon the ballot at that election. R.C. 303.12(H) does refer to a special election to be held at the same time as the next general or primary election.

However, reading R.C. 303.12(H) *in pari materia* with R.C. 3501.02 leads only to the conclusion that the reference in R.C. 303.12(H) to the next

primary or general election refers to the next primary or general election occurring more than seventy-five days after the filing of the referendum petition and the certification thereof by the board of elections. Any other construction would yield absurd results, giving the board of county commissioners the right fully to destroy any referendum right by acting between seventy-five and thirty days before an election and to reduce the time for filing a referendum petition, by adopting a resolution less than one hundred five days prior to the next primary or general election.

Accordingly, the full thirty days prescribed by R.C. 303.12(H) was available for the filing of a referendum petition. The assumption by the trial court that the time had been shortened by the action of the county commissioners being only eighty-four days before the next election is unwarranted. There was no extraordinary need for haste and, accordingly, no such need exists to justify noncompliance with the statutory requirements for a referendum petition, even if required haste could otherwise justify such noncompliance.

Nevertheless, under the circumstances of this case, we fail to find any prejudice to plaintiffs resulting from the admission of the evidence. The error was not in the admission of the evidence, but in the use made thereof by the trial court to create a nonexistent exception to the requirement of R.C. 303.12(H) that the referendum petition contain a brief summary of the contents of the amendment proposal. Accordingly, the third assignment of error labeled C is not well-taken.

By the fourth assignment of error, plaintiffs contend that the trial court erred by failing to find the referendum petition invalid for failure to comply with R.C. 303.12 and 3501.38, *supra.*

R.C. 303.12(H) provides that,

"each petition shall be governed by the rules specified in section 3501.38 of the Revised Code." The pertinent provision is that of R.C. 3501.38(J), which requires all petitions to be accompanied by a statement "in bold face capital letters" setting forth the penalty for falsification. The petition form set forth in R.C. 303.12, with which a zoning referendum petition must "substantially" comply, sets forth the exact language prescribed by R.C. 3501.38(J) immediately following the statement and signature of the circulator of the petition. Here, the required language is contained at that location of the petition and is in capital letters, but as to the darkness of the letters, they do not appear to be any darker than the other letters appearing in the petition, although arguably all are in bold face.

Plaintiffs presented the testimony of a printer who purported to testify as an expert and rendered an opinion not only that the falsification statement on the petition was not in bold face, but that nothing could be typed in bold face on a typewriter. The printer testified as to printing terms and as to what constitutes "bold face type" in printer's language, rather than as to the general meaning of the words "bold face." Here, the legislature used the term "bold face capital letters" rather than "bold face type" and in any event, we cannot assume that the legislature intended to require that referendum petitions be printed only by use of type-set methods utilizing a certain form of type face. Essentially, bold face connotes that the letters are darker than normal letters produced by the same means, and in printing terms, darker letters are produced by a thicker or wider type face than is normally used. In other words, bold face connotes a deviation from normal so that the intensity of the darkness of the letters tends to make them stand

out from normal letters. We agree with plaintiffs that the testimony of the printer does not require a finding as a matter of law either that the letters are not bold face or that there was a failure of substantial compliance. Both of these issues are factual issues to be determined by the trier of facts.

In addition, we note that plaintiffs contend the provisions of R.C. 303.12 and 3501.38 are mandatory and must be complied with. We agree. However, even though it is mandatory that a certain provision of law be complied with, the question then arises as to what constitutes compliance with such mandatory requirement of law. Here, the question is one of what constitutes compliance, not whether the section is mandatory. Although plaintiffs contend substantial compliance is insufficient, it is generally held that exact and strict compliance is not required but, instead, substantial compliance with mandatory statutory requirements is sufficient. See *State, ex rel. Polcyn,* v. *Burkhart* (1973), 33 Ohio St. 2d 7, 62 O.O. 2d 202, 292 N.E. 2d 883, and *State, ex rel. Maurer,* v. *Franklin Cty. Bd. of Elections* (1987), 33 Ohio St. 3d 53, 514 N.E. 2d 709. We see no reason for a different rule with respect to R.C. 3501.38.

If the purpose of the statutory requirement is served, there is no reason to invalidate otherwise valid referendum petitions merely because of some hypertechnical noncompliance. However, what constitutes substantial compliance is generally a question of fact rather than law. The basic issue is whether the purpose of the statute has been served, which requires evidence in the ordinary case. The issue was whether the apparent failure to use bold face letters constitutes a failure of statutory compliance. This is a factual issue in this instance. Here, the trial court made a factual determination, and as indicated above, a reviewing court should not interfere with that factual determination supported by competent, credible evidence. Accordingly, as indicated above, the fourth assignment of error is not well-taken.

By the fifth assignment of error, plaintiff contends that the trial court erred in refusing both the granting of a stay and a temporary injunction pending appeal. There was no need for the trial court to grant a stay since Civ. R. 62 expressly provides that the only function of the trial court with respect to stays is setting of the supersedeas bond. See *State, ex rel. Ocasek,* v. *Riley* (1978), 54 Ohio St. 2d 488, 8 O.O. 3d 466, 377 N.E. 2d 792. See, also, *State, ex rel. Bd. of Trustees,* v. *Davis* (1982), 2 Ohio St. 3d 108, 2 OBR 658, 443 N.E. 2d 166. However, the existence of error does not require reversal unless such error is prejudicial.

We find no prejudicial error in the trial court's failure to comply with Civ. R. 62 in this instance. A stay of execution of the trial court's judgment would have accomplished no more than that, staying the execution of the trial court's judgment. Such a stay would not have prevented the defendant, Franklin County Board of Elections, from proceeding to hold the election and ascertaining the results thereof, since the trial court judgment that would have been stayed was one denying injunctive relief to plaintiffs. Staying the denial of injunctive relief does not create an affirmative injunction and even if granted would have left the board of elections free to place the issue on the ballot. Only a temporary or preliminary injunction pending appeal would have given effective relief to plaintiffs. A stay of the trial court judgment would not have given effective relief to plaintiffs. We also note that the trial court error was not in denying a stay, but in failing to set a supersedeas bond as required by Civ. R. 62.

Plaintiffs also contend that the trial court erred in failing to grant an injunction pending appeal. The trial court denied an injunction pending appeal. Upon application to this court, a similar request was denied upon the ground that the appellants (plaintiffs) have failed sufficiently to indicate irreparable injury would result if the injunction not be granted during the pendency of the appeal. Plaintiffs appealed that order to the Supreme Court, and, we understand, obtained an injunction of some nature from that court which had the effect of permitting the election to proceed, but also of preventing the ascertainment of the result of the election. Plaintiffs have filed a motion for reconsideration in this court, but it would be inappropriate for this court to reconsider, even assuming it is proper, until such time as the Supreme Court determines whether or not the order of this court appealed from constitutes an appealable order. We have not been advised of any such determination by the Supreme Court.

We do agree, however, that upon a proper showing either the trial court or this court should have granted some type of injunctive relief. It would, however, be sufficient to enjoin defendant board of elections from certifying the results of the election. The purpose of any injunctive relief would be to ensure that this court could render an effective judgment in the event we determine, as we have, that the trial court erred in its determinations with respect to the referendum petitions. However, even the holding of the election and the certification of the results thereof would not necessarily deny relief to plaintiffs unless they were guilty of laches with respect to the conduct of the election. The zoning resolution is legislative in nature as is the action by the electorate. The validity of legislation, including the issue of whether it was validly adopted, can ordinarily be litigated after the adoption of the legislation in the absence of a showing that the party seeking to challenge the legislation is guilty of laches. Accordingly, since no prejudicial error is demonstrated by plaintiffs with respect to the trial court's denial of a stay of execution and of an injunction pending appeal, the fifth assignment of error labeled E is not well-taken.

Subsequent to oral argument, intervening defendants-appellees filed with this court a motion seeking dismissal of the appeal, relying upon *Columbus* v. *Adams* (1984), 10 Ohio St. 3d 57, 10 OBR 348, 461 N.E. 2d 887. We find no merit whatsoever to intervenors' contentions. In *Adams*, the Supreme Court first found to the effect that under the unusual circumstances involved, an immediate right of appeal existed from an order overruling a motion to dismiss. The court next found that this court had no jurisdiction because the order from which the appeal is taken did not constitute a final appealable order. Accordingly, since the Supreme Court found that this court had no jurisdiction, the appeal not being from a final appealable order, any subsequent order issued by this court would necessarily be void. The Supreme Court did comment, however, upon the fact that, due to the nature of the appeal, a determination by this court effectively deprived the Supreme Court of the ability to grant effective relief to the parties upon the appeal, of the appealability of the appealed order, since the action in the court of appeals had been determined on its merits prior to the Supreme Court determination of lack of jurisdiction to make that merit determination.

The Supreme Court set forth the correct test which is that when an order of a court is appealed to an ap-

pellate court, the lower court loses jurisdiction to enter an order which would have the effect of impairing the appellate court's ability to exercise appellate jurisdiction over the issue appealed to that court. This is not just a matter of rendering certain issues moot so that a determination is not necessary but, rather, must be of a nature that actually interferes with the exercise of appellate jurisdiction by the appellate court. There is no such interference in this case. The issue appealed to the Supreme Court was whether or not a temporary or preliminary injunction should be granted to plaintiffs to be effective only during the pendency of this appeal in this court. The issue appealed to the Supreme Court in no way related to or affected the merit issues pending before this court. Since the Supreme Court apparently granted temporary relief, such granting of temporary relief had the same effect as if the Supreme Court had taken the case on its merits and determined it in favor of the appellants. There simply is no reason to abate or stay the merit determination of this court until such time as it be determined whether temporary injunctive relief should be granted during the pendency of the matter in this court upon appeal.

We are mindful of certain decisions which assume that all jurisdiction over a case is lost in the original court when an appeal is taken to an appellate court. Obviously, this is not true, since it is well-recognized that execution of a judgment may proceed during appeal unless a stay of execution is effected in the proper manner. Likewise, it is recognized that when only a part of a case is appealed, the original court may proceed and determine the remainder of the pending case.

The permitting of interlocutory appeals in those few instances where they are permitted would create even greater interference with the orderly administration of justice, if every appeal divested the original court of all jurisdiction over the action. Although there is some suggestion in similar authority that this is the case, it is inaccurate. Presumably, the confusion of those cases stems from the fact that many years ago the word "appeal" was utilized to refer to the now abolished law and fact appeals, whereas appeals as we now know them (on questions of law only) were called "proceedings in error." The rules that we now follow with respect to the fact of appeal upon the jurisdiction of the original court are those that used to pertain to proceedings in error rather than those that pertained to an appeal constituting an appeal upon questions of law and fact which necessarily removes the entire case and all issues therein to the appellate court. See *In re Kurtzhalz* (1943), 141 Ohio St. 432, 25 O.O. 574, 48 N.E. 2d 657. Accordingly, this court has jurisdiction over all issues in this appeal not inconsistent with the power of the Supreme Court to review, affirm, modify or reverse the order previously appealed to that court which relates only to the granting of an injunction *pendente lite*, and does not relate in any way to the merit issue determined hereby. The motion to dismiss is overruled.

For the foregoing reasons, the first and second assignments of error labeled A and B are sustained and the remaining assignments of error labeled C, D and E are overruled, and the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

YOUNG and BRYANT, JJ., concur.