**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. One Person One Vote v. Ohio Ballot Bd.*, Slip Opinion No. 2023-Ohio-1928.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1928

THE STATE EX REL. ONE PERSON ONE VOTE ET AL. *v.* OHIO BALLOT BOARD ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. One Person One Vote v. Ohio Ballot Bd.*, Slip Opinion No. 2023-Ohio-1928.]**

*Elections—Mandamus—Writ sought to compel Ohio Ballot Board to adopt new ballot language for proposed amendment to Ohio Constitution and to compel Ohio secretary of state to adopt new ballot title for the proposed amendment—Writ granted in part and denied in part.*

(No. 2023-0672—Submitted June 8, 2023—Decided June 12, 2023.)

IN MANDAMUS.

————————————

**Per Curiam.**

**{¶ 1}** In May 2023, the Ohio General Assembly passed a joint resolution to place a proposed amendment to the Ohio Constitution on the ballot for a special election to be held on August 8, 2023.  The proposed amendment, if approved by a

majority of voters, would change some of the rules for proposing constitutional amendments by initiative petition and require future constitutional amendments to be approved by at least 60 percent of voters. This case involves the ballot language adopted by respondent Ohio Ballot Board and the ballot title adopted by respondent Secretary of State Frank LaRose. Relators, One Person One Vote, Jeniece Brock, Brent Edwards, and Christopher Tavenor, argue that the ballot language and title are incomplete and misleading. They seek a writ of mandamus compelling the ballot board to adopt new ballot language for the proposed amendment and compelling Secretary LaRose to adopt a new ballot title for the proposed amendment. We grant the writ in part and deny it in part.

## I. BACKGROUND

{¶ 2} On May 10, 2023, the Ohio House of Representatives and the Ohio Senate passed 2023 Am.Sub.S.J.R. No. 2, which proposes three changes to the provisions of the Ohio Constitution governing how the Constitution may be amended. First, future amendments to the Constitution would need to be approved by at least 60 percent of voters, instead of by a simple majority. *See* Ohio Constitution, Article II, Sections 1b and 1e; Article XVI, Sections 1 and 3. Second, proposing a constitutional amendment by initiative petition would require signatures of electors of each Ohio county, instead of half of Ohio's counties. *See* Ohio Constitution, Article II, Section 1g (fourth paragraph). And third, the proposed amendment would eliminate a provision allowing an insufficient initiative petition to be supplemented with additional signatures once the petition is filed with the secretary of state. *See id*. (first and third paragraphs).

{¶ 3} R.C. 3519.21 required Secretary LaRose to determine an appropriate title for the proposed amendment, and Article XVI, Section 1 of the Ohio Constitution required the ballot board to adopt ballot language for the proposed amendment. On May 18, Secretary LaRose and the ballot board determined that the following language would appear on the ballot:

## Issue 1

**Proposed Constitutional Amendment**

**ELEVATING THE STANDARDS TO QUALIFY FOR AND TO PASS ANY CONSTITUTIONAL AMENDMENT**

**Proposed by Joint Resolution of the General Assembly**

**To amend Sections 1b, 1e, and 1g of Article II and Sections 1 and 3 of Article XVI of the Constitution of the State of Ohio**

A majority yes vote is necessary for the amendment to pass. The proposed amendment would:

- Require that any proposed amendment to the Constitution of the State of Ohio receive the approval of at least 60 percent of eligible voters voting on the proposed amendment.

- Require that any initiative petition filed on or after January 1, 2024 with the Secretary of State proposing to amend the Constitution of the State of Ohio be signed by at least five percent of the eligible voters of each county in the state.

- Specify that additional signatures may not be added to an initiative petition filed with the Secretary of State on or after January 1, 2024 proposing to amend the Constitution of the State of Ohio.

If passed, the amendment shall be effective immediately.

| | YES | SHALL THE |
|---|---|---|
| | NO | AMENDMENT BE |
| | | APPROVED? |

(Boldface and capitalization sic.)

{¶ 4} On May 23, relators filed this original action against the ballot board and its members (Secretary LaRose and respondents Theresa Gavarone, William DeMora, William Morgan, and Elliot Forhan), seeking a writ of mandamus compelling the board to reconvene to adopt new ballot language or, alternatively, compelling the board to place the full text of the proposed amendment on the ballot. Relators also sued Secretary LaRose in his capacity as secretary of state, seeking a writ of mandamus compelling him to adopt a new ballot title.

## II. ANALYSIS

### A. The ballot language

{¶ 5} To be entitled to a writ of mandamus against the ballot board, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the board to provide it, and the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 22. Relators must prove their entitlement to the writ by clear and convincing evidence. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 13.

{¶ 6} Given the proximity of the August 8 election, relators lack an adequate remedy in the ordinary course of the law. *See Voters First* at ¶ 22.

{¶ 7} In the absence of any allegations of fraud or corruption, the remaining mandamus requirements ask whether the ballot board abused its discretion or clearly disregarded applicable law in adopting the ballot language. *See id*. at ¶ 23. Article XVI, Section 1 of the Ohio Constitution requires the ballot board to "properly identify the substance of the proposal to be voted upon" and provides that this court "shall not" hold ballot language invalid "unless [the language] is such as to mislead, deceive, or defraud the voters."

{¶ 8} When assessing ballot language, we typically examine whether the language tells voters what they are being asked to vote on and whether the language

4

impermissibly amounts to persuasive argument for or against the issue. *State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981). If there are defects in ballot language, we examine the defects as a whole and determine whether their cumulative effect violates the constitutional standard. *See id*.

*1. Absence of information about current constitutional provisions*

**{¶ 9}** Relators argue that the ballot language will mislead voters because it does not say what the law currently is. Relators emphasize that the ballot language does not state that a proposed constitutional amendment currently may be passed by a simple majority vote, that an initiative petition proposing a constitutional amendment currently must be signed by electors from at least one-half of Ohio's counties, or that the Constitution currently provides for a ten-day cure period for the filing of additional signatures when a petition is found to lack sufficient signatures. Relators contend that voters need this information to fully appreciate the changes they are being asked to consider.

**{¶ 10}** Contrary to relators' suggestion, we have never held that ballot language must inform voters about current law. Relators rely on three cases, but none supports the proposition that ballot language prescribed by the ballot board under Article XVI, Section 1 must describe the existing constitutional provisions that are the subject of the proposed amendment.

**{¶ 11}** Relators mainly rely on *Markus v. Trumbull Cty. Bd. of Elections*, 22 Ohio St.2d 197, 259 N.E.2d 501 (1970), a case involving the propriety of ballot language for a zoning referendum. The ballot language at issue in *Markus* asked whether certain described property should be rezoned from residential to business-and-commercial use. *Id*. at 200-202. We held that the language did not accurately inform voters what they were being asked to vote on, because part of the described property was already zoned for business-and-commercial use. *Id*. at 202-203. We faulted the ballot language for failing to "indicate[] that part of the property was presently zoned for business and commercial use and that the zone change was

merely an increase in the size of the business and commercial zone." *Id*. at 202. We quoted with approval the trial court's statement that ballot language " 'must be complete enough to convey an intelligent idea of the scope and import of the amendment.' " *Id*. at 202-203.

{¶ 12} Relators argue that under *Markus*, ballot language must describe the pre-amendment status quo. But *Markus* does not lend itself to such a broad reading. In *Markus*, the ballot language misdescribed the property subject to the zoning referendum. We did not invalidate the language at issue in *Markus* based on any failure to describe existing law, and we did not hold that ballot language must describe existing law.

{¶ 13} Relators also cite *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, another zoning-amendment case, in which we stated, "The dispositive issue is 'whether the language [of the summary] itself *coupled with the actual existing circumstances* is misleading to the average voter utilizing an objective standard.' " (Brackets and emphasis added in *McCord*.) 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 52, quoting *Olen Corp. v. Franklin Cty. Bd. of Elections*, 43 Ohio App.3d 189, 193, 541 N.E.2d 80 (10th Dist.1988). Relators fail to explain the context of that statement and overstate its significance. In *McCord*, an effort to rezone the property at issue had been defeated by referendum less than two years earlier. *See id*. at ¶ 5. In referring to "the actual existing circumstances" in *McCord*, we were explaining that the recent events concerning the property's zoning status were relevant. *See id*. at ¶ 52. In fact, we concluded that the language at issue "conveyed the false impression" that the rezoning issue was the same as the previous one. *Id*. at ¶ 55. But we did not hold that ballot language must describe existing law.

{¶ 14} And finally, relators cite *Voters First*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, at ¶ 40-45, 58, in which we invalidated ballot language for a proposed constitutional amendment. But in *Voters First*, we held that the

ballot language at issue was invalid because it failed to adequately describe the amendment itself. *See id*. at ¶ 30-31, 37, 40. *Voters First* does not support the proposition that ballot language must describe existing law.

{¶ 15} These three cases also fail to support relators' argument that the ballot language here is invalid because it does not inform voters that the proposed amendment would change constitutional provisions that have been in effect since 1912. Relators contend that such historical context would be material to voters, but they cite no legal authority requiring ballot language to tell voters how long current law has been in effect. Under Article XVI, Section 1 of the Ohio Constitution, the issue is whether the ballot board "properly identif[ied] the substance of the proposal to be voted upon" and whether the language adopted by the board "mislead[s], deceive[s], or defraud[s] the voters." Relators have not shown that voters will be misled, deceived, or defrauded based on the ballot language's failure to state that the proposed amendment would change constitutional provisions that have been in effect since 1912.

{¶ 16} Relators also refer to past proposed amendments that had ballot language containing information about the constitutional status quo, arguing that describing current law in the ballot language is standard practice. The ballot board, for its part, points to the ballot language for a couple of recently proposed constitutional amendments that did not include that sort of information. These arguments do not address the issue before us. Past practice does not inform whether the ballot language at issue in this case will "mislead, deceive, or defraud the voters," *id*.

{¶ 17} Again, under Article XVI, Section 1, the ballot board was required to "properly identify the substance of the proposal to be voted upon." Relators have not shown that a description of current law is essential for voters to understand what the law would be if the proposed amendment is approved or that the absence of

such information will mislead, deceive, or defraud the voters. Accordingly, we deny the writ as it relates to this aspect of relators' claim.

*2. Alleged inaccuracies*

**{¶ 18}** Relators next argue that the ballot board adopted misleading language about the proposed changes to the ten-day cure period for the filing of additional signatures when a petition is found to lack sufficient signatures and the signature-gathering requirement.

**{¶ 19}** Relators argue that it is misleading for the ballot language to state that the proposed amendment would "[s]pecify that additional signatures may not be added to an initiative petition." Relators argue that "specify" is not an appropriate word to describe that part of the proposed amendment because Article II, Section 1g of the Ohio Constitution currently allows for the filing of additional signatures within ten days after a petition is found to be insufficient. They contend that the proposed amendment would abolish an existing right and that the ballot language falsely implies that that right does not currently exist.

**{¶ 20}** This is a repackaging of relators' argument that ballot language must inform voters about existing law, and we reject it for the reasons discussed above. The ballot language at issue describes what the law would be if the proposed amendment is approved, and it does so accurately. "Specify" means "to mention or name in a specific or explicit manner" or to "tell or state precisely or in detail." *Webster's Third New International Dictionary* 2187 (2002). The proposed amendment would add a sentence to Article II, Section 1g, stating: "No additional signatures may be filed to an initiative petition proposing an amendment to the constitution." The ballot language's use of the word "specify" is accurate and will not mislead, deceive, or defraud voters. We therefore deny the writ as it relates to this aspect of relators' claim.

**{¶ 21}** Relators also argue that it is misleading for the ballot language to state that the proposed amendment would "[r]equire that any initiative petition filed on or

8

after January 1, 2024 with the Secretary of State proposing to amend the Constitution of the State of Ohio be signed by at least *five percent of the eligible voters of each county* in the state." (Emphasis added.) Under the proposed amendment, the number of electors of a county who must sign a petition would be determined based on the total number of votes cast for governor in the last preceding gubernatorial election. *See* Ohio Constitution, Article II, Section 1g. Because not all electors vote in a gubernatorial election, the ballot language here overstates the number of signatures that would be needed to qualify an initiative petition for the ballot.

{¶ 22} The ballot board concedes that this ballot language does not accurately describe the number of elector signatures required from each county. In the absence of any dispute about the inaccuracy of this language, we grant a writ of mandamus ordering the ballot board to adopt lawful ballot language that accurately characterizes and explains the definition of "electors" underlying the petition-signature requirements in the proposed amendment, including how many signatures would be required to qualify an initiative petition for the ballot.

{¶ 23} We deny relators' alternative request for a writ of mandamus ordering the board to place the full text of the proposed amendment on the ballot.

**B. The ballot title**

{¶ 24} R.C. 3519.21 requires Secretary LaRose to determine the ballot title for the proposed amendment. The statute provides that the secretary of state "shall give a true and impartial statement of the measures in such language that the ballot title shall not be likely to create prejudice for or against the measure." To be entitled to a writ of mandamus against Secretary LaRose, relators must show that he abused his discretion or clearly disregarded applicable law in adopting the ballot title. *See State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 9. We must examine whether the ballot title tells voters what they are being asked to vote on and whether it impermissibly uses language that amounts to

persuasive argument. *See Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 141, 519 N.E.2d 347 (1988).

**{¶ 25}** Secretary LaRose's title for the proposed constitutional amendment is: "**ELEVATING THE STANDARDS TO QUALIFY FOR AND TO PASS ANY CONSTITUTIONAL AMENDMENT**." (Boldface and capitalization sic.)

**{¶ 26}** Relators argue that the title does not accurately describe the proposed amendment, because the proposed amendment would change ballot-qualification standards for initiative petitions but not for constitutional amendments proposed by the General Assembly or at a constitutional convention. According to relators, the use of the word "any" falsely suggests that the proposed amendment would change ballot-qualification standards for all proposed constitutional amendments. Secretary LaRose does not directly address this argument but points out that the proposed amendment would affect the requirements for *passing* any constitutional amendment.

**{¶ 27}** Secretary LaRose's use of the word "any" in the title here is likely to mislead voters. The title could give voters the false impression that the proposed amendment would make it more difficult to qualify *all* proposed constitutional amendments for the ballot, regardless of how they are presented. We therefore grant a writ of mandamus ordering Secretary LaRose to prescribe a lawful ballot title that accurately describes the scope of the proposed amendment, without using the word "any" in reference to "constitutional amendment."

**{¶ 28}** Relators also challenge Secretary LaRose's use of the word "elevating" in the title, arguing that the phrase "elevating the standards" is not impartial and "implies that the standards to amend the Constitution are currently too low." Ballot language is improperly persuasive if it is " ' "in the nature of a persuasive argument in favor of or against the issue." ' " *Bailey*, 67 Ohio St.2d at 519, 426 N.E.2d 493, quoting *Beck v. Cincinnati*, 162 Ohio St. 473, 474-475, 124 N.E.2d 120 (1955), quoting the trial court's decision in *Beck*. This court has

previously declined to hold that ballot language is improperly persuasive when the language is accurate and does not improperly induce a vote for or against the amendment or "introduce a new subject * * * outside the terms of the proposed amendment," *State ex rel. Cincinnati for Pension Reform v. Hamilton Cty. Bd. of Elections*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, ¶ 40, 49 (denying writ of mandamus seeking to change ballot language that emphasized that a charter amendment would possibly result in new taxes and fees, because the contested language was accurate).

**{¶ 29}** Relators do not contend that the phrase "elevating the standards" is inaccurate. Their own suggested replacements for the word "elevate" underscore this point. Take, for example, their suggestion to use the word "raising." One definition of the verb "elevate" is "to raise"—and relators acknowledge this. *Webster's Third New International Dictionary* at 735. Another of their suggested replacements is "heightening." Webster's also defines "elevate" as "[t]o raise to a higher position or place," *Webster's II New College Dictionary* 365 (1995). This is not much different from Webster's definition of "heighten": "[t]o make or become high or higher." *Id.* at 513. Each of these words is, therefore, similar in meaning. Distinguishing between them requires parsing minute differences in connotation. But such wordsmithing should be left to Secretary LaRose because it is not for this court to choose between words of the same meaning. *See Bailey* at 519. We therefore deny the requested writ of mandamus as to this aspect of relators' claim.

### III. CONCLUSION

**{¶ 30}** We grant in part and deny in part the requested writ of mandamus. The ballot board shall reconvene forthwith to adopt lawful ballot language that accurately characterizes and explains the definition of "electors" underlying the petition-signature requirements in the proposed amendment, including how many signatures would be required to qualify an initiative petition for the ballot.

Secretary LaRose, forthwith, shall prescribe a lawful ballot title that accurately describes the scope of the proposed amendment, without using the word "any" in reference to "constitutional amendment."

Writ granted in part
and denied in part.

KENNEDY, C.J., and FISCHER, DeWINE, and DETERS, JJ., concur.

DONNELLY, J., concurs in part and dissents in part, with an opinion joined by STEWART and BRUNNER, JJ.

BRUNNER, J., concurs in part and dissents in part, with an opinion.

_____

**DONNELLY, J., concurring in part and dissenting in part.**

{¶ 31} I concur in the per curiam opinion, with the exception of the penultimate paragraph.

{¶ 32} R.C. 3519.21 states that "[i]n preparing * * * a ballot title the secretary of state or the [Ohio Ballot Board] shall give a true and impartial statement of the measures in such language that the ballot title shall not be likely to create prejudice for or against the measure."

{¶ 33} The proposed amendment at issue is seeking to make it harder to amend the Ohio Constitution based on an initiative petition than it is under the current constitutional provision. Some might, not implausibly, call this restricting or curtailing or diminishing or limiting the power of the people to amend the Constitution. Instead, respondent Secretary of State Frank LaRose styles this as "elevating" the standards to amend the Constitution. This word creates prejudice in favor of the measure.

{¶ 34} "Changing" the requirement to amend the Constitution is not prejudicial. "Modifying" the requirement to amend the Constitution is not prejudicial. "Altering" the requirement to amend the Constitution is not prejudicial. "Revising" and "adjusting" are other words that convey change without

12

engendering approval or disapproval. "Elevating" is plainly prejudicial and should not be part of the title.

STEWART and BRUNNER, JJ., concur in the foregoing opinion.

_____

**BRUNNER, J., concurring in part and dissenting in part.**

{¶ 35} I concur in the decision of the majority to the extent that it grants a peremptory writ mandating changes to the ballot language and ballot title drafted by respondents Ohio Ballot Board and Secretary of State Frank LaRose, respectively. I agree that a better description of the electors whose signatures would qualify a petition for placement on the ballot needs to be included and that the ballot title does not accurately describe the proposed amendment. As the majority states, the proposed amendment would change ballot-qualification standards for initiative petitions but not for constitutional amendments proposed by the General Assembly. But that statement does not go far enough. To comply with the Ohio Constitution, the ballot language must more clearly explain these differences so that voters are aware of the inequalities that would be created between the ability of voters to put a proposed amendment on the ballot through the initiative process and the ability of the General Assembly to autonomously do so.

{¶ 36} The proposed amendment would impose strenuous requirements for ballot access for citizen-initiated constitutional amendments. One such requirement increases the geographical reach required for a citizen-initiated petition to be placed on the ballot. The Ohio Constitution currently requires signatures from electors in half of Ohio's 88 counties on initiative petitions for constitutional amendments. *See* Ohio Constitution, Article II, Section 1g (fourth paragraph). The proposed amendment would require signatures from all 88 counties, 2023 Am.Sub.S.J.R. No. 2 ("S.J.R. 2").

{¶ 37} Additionally, the opportunity to cure an insufficient petition with more signatures would be eliminated under the proposed amendment. The

Constitution currently allows an insufficient initiative petition to be supplemented with additional signatures within ten days, Ohio Constitution, Article II, Section 1g (third paragraph). S.J.R. 2 would eliminate that provision.

{¶ 38} The number of signatures needed, which would be required from each of the 88 counties under the proposed amendment, would increase, since the number of signatures required in each county changes from 5 percent of the number of votes cast in the last gubernatorial election, *see* Ohio Constitution, Article II, Section 1a, 1g, to simply 5 percent of all electors in the county, S.J.R. 2, at Article II, Section 1g(E). This change is significant because the new requirement increases the pool of electors to include those who did not vote in the last gubernatorial election from which to compute the required 5 percent to qualify for the ballot.

{¶ 39} These proposed new ballot-access requirements do not apply to amendments proposed to the Constitution by joint resolution of the Ohio legislature; the requirements for the General Assembly to place a proposed amendment on the ballot do not change as a result of S.J.R. 2. The General Assembly will continue to be able to put whatever issue it wants on the ballot if it can obtain approval by three-fifths of each house. Ohio Constitution, Article XVI, Section 1 (first paragraph). And if the General Assembly continues to ignore orders of this court regarding the state legislative redistricting process, gaining a three-fifths vote should not be difficult for it to accomplish. Finally, as proponents of S.J.R. 2 have claimed, the current General Assembly believes that it may declare a special election for voting on a constitutional amendment proposed by legislative joint resolution and schedule it for any date it desires, even when that very question is part of the ballot issue to be voted on.

{¶ 40} The incongruous impact of these changes is clear: S.J.R. 2 would make it onerously oppressive for citizens to amend the Ohio Constitution through the initiative process, but it would leave unaffected the General Assembly's ability to propose amendments that serve its interests at elections established to fulfill its

own desires. This is a fundamental shift in the balance of power between the people of this state and their legislative representatives. In 1912, Ohioans specifically reserved to themselves the power to initiate by petition proposals to amend their Constitution. Now their elected representatives, through the state's ballot board and secretary of state, do not clearly present to them in the ballot language and title what is really happening when they consider whether to give up their power and to what extent. It is "to what extent" that is obfuscated by the language we review today.

{¶ 41} S.J.R. 2 is a proposal to substantially diminish the most significant power held by the people, the power of initiative petition to amend the Ohio Constitution. Our Constitution leaves no doubt about this. "All political power is inherent in the people." Ohio Constitution, Article I, Section 2. The people have delegated certain powers to the state government, but "all powers, not [so] delegated, remain with the people." Article I, Section 20. "The *first* aforestated power reserved by the people is designated the initiative." (Emphasis added.) Article II, Section 1a.

{¶ 42} Under S.J.R. 2, the ability of ordinary citizens to propose an amendment to the Ohio Constitution by collecting signatures from other citizens would be severely hampered. Only a small number of the wealthiest people in this state could afford to exercise that power, and even they might find it easier—and less costly—to seek constitutional change by simply speaking to members of the General Assembly, to whom they may make generous campaign contributions. For a citizen-initiated constitutional amendment to succeed if S.J.R. 2 is adopted (by just 50 percent plus 1 vote), vast amounts of financial support would be necessary just to get it on the ballot, let alone to pass it by 60 percent of the vote. This would essentially defeat the ability of citizen-led initiatives to survive and invite what some call "outside special interest groups" to influence what uniquely belongs to Ohioans under Ohio Constitution, Article II, Section 1a.

**{¶ 43}** One might argue that these changes will take effect only if the voters approve them at the proposed special election on August 8, 2023, which is part of the substance of S.J.R. 2. To my point, the ballot language and ballot title play a critical role in informing voters about the substance of the proposed constitutional amendment before them. It is unlikely that an ordinary, everyday voter is aware of the relatively simple and low-cost requirements of Article XVI that allow the legislature to easily propose constitutional amendments. This court should require the Ohio Ballot Board and Secretary LaRose to fully explain the proposed amendment in the ballot language and ballot title and fulfill the constitutional requirement that the language not be misleading or contain material omissions that result in making the ballot language and title deceptive.

**{¶ 44}** Voters are not likely to appreciate that the proposed procedures for petition-initiated constitutional amendments in S.J.R. 2 would fundamentally tip the balance of power away from the people and in favor of the General Assembly by severely diminishing Ohioans' first reserved right under their state Constitution. It is essential that the ballot language makes voters aware of this fundamental difference so as not to remain misleading and deceptive.

**{¶ 45}** I would order the Ohio Ballot Board to employ ballot language that clearly informs voters of the difference S.J.R. 2 would create between the ballot-qualification standards for initiative-petition constitutional amendments and constitutional amendments proposed by the General Assembly. Because the majority does not, I dissent from that portion of its decision.

_____

McTigue & Colombo, L.L.C., Donald J. McTigue, and Katie I. Street, for relators.

Dave Yost, Attorney General, and Julie M. Pfeiffer, Amanda L. Narog, and Michael A. Walton, Assistant Attorneys General, for respondents.

ACLU of Ohio Foundation, Amy R. Gilbert, Freda J. Levenson, David J.

Carey, and Carlen Zhang-D'Souza, urging granting of the writ for amicus curiae League of Women Voters of Ohio.

Brian J. Eastman and Kelly L. Phillips, urging granting of the writ for amicus curiae Ohio Education Association.

Robinson Law Firm, L.L.C., and Emmett E. Robinson, urging denial of the writ for amicus curiae Restoring Integrity and Trust in Elections.

—————————————