[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohioans United for Reproductive Rights v. Ohio Ballot Bd.*, Slip Opinion No. 2023-Ohio-3325.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3325

THE STATE EX REL. OHIOANS UNITED FOR REPRODUCTIVE RIGHTS ET AL. *v.* OHIO BALLOT BOARD ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohioans United for Reproductive Rights v. Ohio Ballot Bd.*, Slip Opinion No. 2023-Ohio-3325.]**

*Mandamus—Elections—Initiative—Proposed constitutional amendment—Ballot language—Ohio Constitution, Article XVI, Section 1—Writ sought to compel Ohio Ballot Board to adopt new ballot language for proposed amendment to Ohio Constitution—Writ granted in part and denied in part.*

(No. 2023-1088—Submitted September 14, 2023—Decided September 19, 2023.)

IN MANDAMUS.

_____

**Per Curiam Opinion announcing the judgment of the court.**

{¶ 1} On November 7, 2023, Ohio voters will vote on Issue 1, a constitutional amendment proposed by initiative petition titled "The Right to Reproductive

Freedom with Protections for Health and Safety." This case involves the ballot language adopted by respondent Ohio Ballot Board.

{¶ 2} Relator Ohioans United for Reproductive Rights is a coalition of statewide reproductive health, rights, and justice organizations advocating passage of Issue 1. Relators David Hackney, Nancy Kramer, Jennifer McNally, Ebony Speakes-Hall, and Aziza Wahby (collectively, "the committee") are individual members of the committee that circulated the initiative petition to propose Issue 1. Relators contend that the ballot language is misleading, contains material omissions, and is improperly argumentative against the amendment. Relators seek a writ of mandamus compelling respondent Secretary of State Frank LaRose to reconvene the Ohio Ballot Board[1] and directing the ballot board to either (1) adopt the full text of the proposed amendment as the ballot language or (2) prescribe lawful ballot language.

{¶ 3} We agree with relators that the term "citizens of the State" in the ballot language is misleading. We therefore grant a limited writ of mandamus ordering the secretary to reconvene the ballot board forthwith and ordering the board to adopt ballot language that accurately describes that the proposed amendment regulates actions of the "State." The writ is denied in all other respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 4} The committee submitted the proposed constitutional amendment to Attorney General Dave Yost pursuant to R.C. 3519.01(A). And the committee submitted the petition to the secretary of state's office with sufficient signatures to qualify for the November ballot. The proposed amendment's qualification for the ballot triggered the ballot board's duty under Article II, Section 1g of the Ohio Constitution to prescribe the language that voters will see on the ballot.

---

1. The individual members of the ballot board are respondents Secretary of State Frank LaRose (also the chair of the board), Senator Theresa Gavarone, Senator Paula Hicks-Hudson, William Morgan, and Representative Elliot Forhan.

{¶ 5} Under Article II, Section 1g, the ballot board shall prescribe the ballot language "in the same manner, and subject to the same terms and conditions, as apply to issues submitted by the general assembly pursuant to Section 1 of Article XVI of [the Ohio] constitution." In turn, Article XVI, Section 1 provides:

> The ballot language for such proposed amendments shall be prescribed by a majority of the Ohio ballot board, consisting of the secretary of state and four other members, who shall be designated in a manner prescribed by law and not more than two of whom shall be members of the same political party. The ballot language shall properly identify the substance of the proposal to be voted upon. The ballot need not contain the full text nor a condensed text of the proposal. The board shall also prepare an explanation of the proposal, which may include its purpose and effects, and shall certify the ballot language and the explanation to the secretary of state not later than seventy-five days before the election. The ballot language and the explanation shall be available for public inspection in the office of the secretary of state.

{¶ 6} The ballot board met to prescribe and certify the ballot language for the proposed amendment. At the meeting, Secretary of State Frank LaRose, chair of the board, proposed the ballot language, which was opposed by two members of the ballot board. Ballot-board member Senator Paula Hicks-Hudson made a motion for the board to "amend" the secretary's proposed language and instead use the full text of the proposed amendment, as proposed by the committee in a letter submitted to the board. Board member Representative Elliot Forhan joined the motion and spoke against the secretary's proposed language, arguing that it was "rife with misleading and defective language" and identifying several problems he saw with

the proposed language. However, Senator Hicks-Hudson's motion failed by a three-to-two vote.

{¶ 7} Following the failure of her motion to use the amendment text as the ballot language, Senator Hicks-Hudson made another motion, this time proposing changes to the secretary's proposed ballot language. She proposed three amendments to the secretary's proposed language: (1) substitute the phrase "reproductive medical decisions" for "reproductive medical treatment"; (2) change the phrase "the citizens of the State of Ohio" to just "the State of Ohio"; and (3) replace the phrase "unborn child" with "unborn fetus." Senator Hicks-Hudson's motion failed by a three-to-two vote.

{¶ 8} The secretary then moved for the ballot board to approve the ballot language he had proposed. The board approved the secretary's language by a three-to-two vote.

{¶ 9} Relators filed this original action against the ballot board and its members, seeking a writ of mandamus compelling the secretary to reconvene the board. Relators also seek an order compelling the board either to (1) prescribe the amendment's full text as the ballot language or (2) direct the board to prescribe lawful ballot language. With respect to the request for "lawful ballot language," relators identify ten features that the ballot language should either include or omit. The parties have submitted evidence and merit briefs in accordance with the expedited-election-case schedule in S.Ct.Prac.R. 12.08.

## II.  ANALYSIS

### A.  The Applicable Legal Standard

{¶ 10} To be entitled to a writ of mandamus against the ballot board, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the board to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 22. Relators must

4

prove their case by clear and convincing evidence. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 13.

{¶ 11} Relators lack an adequate remedy in the ordinary course of the law because the November 7 election is less than 60 days away. *See State ex rel. West v. LaRose*, 161 Ohio St.3d 192, 2020-Ohio-4380, 161 N.E.3d 631, ¶ 15. The remaining mandamus requirements ask this court to determine whether the ballot board engaged in fraud or corruption, abused its discretion, or clearly disregarded applicable law. *Id*. at ¶ 16. Relators do not allege fraud or corruption here. Thus, the dispositive issue before us is whether the ballot board abused its discretion or clearly disregarded applicable law in adopting the ballot language, *see Voters First* at ¶ 23.

{¶ 12} Article XVI, Section 1 of the Ohio Constitution requires that the ballot language "properly identify the substance of the proposal to be voted upon." This court "shall not" hold that ballot language is invalid "unless it is such as to mislead, deceive, or defraud the voters." *Id.* Applying these constitutional requirements, we examine whether the language tells voters what they are being asked to vote on and whether the language is impermissibly argumentative, either in favor of or against the issue. *State ex rel. One Person One Vote v. Ohio Ballot Bd*., __ Ohio St.3d __, 2023-Ohio-1928, __ N.E.3d __, ¶ 8, citing *State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981). "If there are defects in ballot language, we examine the defects as a whole and determine whether their cumulative effect violates the constitutional standard." *Id.*; *see also Voters First* at ¶ 26.

### B. Does the Ballot Language Mislead the Voters?

{¶ 13} Relators argue that the board-approved ballot language is defective in several ways. They contend that the ballot language misleads voters about (1) the right the amendment would create, (2) whom the amendment would restrict, (3) whether the amendment would protect an individual's right to continue a

pregnancy, (4) the scope of a treating physician's discretion to determine "fetal viability," and (5) how the amendment would limit regulation by the state. For the reasons explained below, we agree with relators that the ballot language approved by the ballot board misleads the average voter about whose actions the amendment restricts. But the ballot language is not defective in any other respect.

*1. The right the amendment would create*

{¶ 14} First, relators argue that the ballot language approved by the ballot board improperly misleads voters about what right the proposed amendment would create if approved. This issue relates to the following portions of the proposed amendment and ballot language:

| **Proposed Amendment** | A. Every individual has a right to make and carry out one's own reproductive decisions, including but not limited to decisions on:<br><br>1. contraception;<br>2. fertility treatment;<br>3. continuing one's own pregnancy;<br>4. miscarriage care; and<br>5. abortion.<br><br>B. The State shall not, directly or indirectly, burden, penalize, prohibit, interfere with, or discriminate against either:<br><br>1. An individual's voluntary exercise of this right or<br>2. A person or entity that assists an individual exercising this right[.] |
| --- | --- |

| Ballot Language | The proposed amendment would: <br><br> • Establish in the Constitution of the State of Ohio an individual right to one's own reproductive medical treatment, including but not limited to abortion; <br> • Create legal protections for any person or entity that assists a person with receiving reproductive medical treatment, including but not limited to abortion; |
|---|---|

{¶ 15} Relators take issue with the ballot language's substitution of "reproductive medical treatment" for "reproductive decisions." They argue that the ballot board's phraseology is misleading in that a "decision" is not the same as "treatment." According to relators, a reproductive *decision* connotes an individual's "considered determination about any matter related to producing offspring" while the term "treatment" is the action or way of treating a patient medically or surgically. Relators argue that the ballot language's use of "reproductive medical treatment" suggests that the proposed amendment would grant a right *to medical care*, which significantly changes the amendment's meaning. Relators say that the phrase "reproductive medical treatment," when read in context, connotes "an *affirmative* right to government-provided 'reproductive medical treatment' of any sort." (Emphasis sic.)

{¶ 16} Relators' argument focuses on the proposed amendment's grant of a right to make decisions involving reproduction. The amendment's text states that every individual has a right "to make *and carry out* one's own reproductive decisions." (Emphasis added.) While relators emphasize the individual right to "make" a decision, they ignore that the phrase "carry out" is at the heart of the amendment's grant of rights. If the amendment provided only a protection of the individual's right to "make" a decision, it would be a shell of a right; as respondents

correctly note, "a person's internal determinations lay well outside the State's regulatory authority," and "[i]nforming voters that they continue to be free to make their own decisions in their minds does not tell them what effect the amendment would have in practice." The amendment is not designed to protect just an individual's right to make a decision; it grants to the individual a right to "carry out" that decision without state interference, which is the crux of the amendment's substance.

{¶ 17} The relevant question is whether the term "medical treatment" is misleading in its description of an individual's right to "carry out" a decision involving reproduction. In our view, the ballot board's use of the term "reproductive medical treatment" is imprecise at worst. This imprecision, however, does not render the ballot language misleading. The ballot language accurately tells voters that the proposed amendment, if passed, would protect an individual's right to carry out such decisions by obtaining medical treatment free from government interference. And although some decisions involving reproduction do not require medical treatment, some do. The ballot language expresses the amendment's intent to prevent government interference with an individual's pursuit of medical treatment to carry out those decisions.

{¶ 18} Relators also argue that the term "medical treatment" is misleading in that it gives the impression that passage of the proposed amendment would grant an individual right to state-provided medical treatment. But the ballot language says nothing about state-provided medical treatment. It states that the amendment establishes "an individual right *to one's own* reproductive medical treatment." (Emphasis added.) This describes an individual right with which the state cannot interfere, not a benefit provided by the state.

{¶ 19} Relators also argue that the ballot language referring to "medical treatment" is misleading because of omissions that "obscure the nature of the right that the Amendment would create." Specifically, relators emphasize that the ballot

language mentions only one category of the proposed amendment's listed decisions—abortion—while the amendment covers at least five. Failing to mention the four other categories is misleading, say relators, because it "falsely suggests ambiguity about what categories of decision the overarching right 'to make and carry out one's own reproductive decisions' covers." Relators argue that the ballot language's emphasis on abortion to the exclusion of other decisions reinforces the impression that the amendment creates a right to *state-provided* abortions.

{¶ 20} Relators have not shown that the ballot language is misleading in this respect. Any omission in ballot language "must not be material, i.e., its absence must not affect the fairness or accuracy of the text." *Voters First*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, at ¶ 30. Nor may ballot language "omit any 'essential part' of the proposed amendment." *State ex rel. Cincinnati for Pension Reform v. Hamilton Cty. Bd. of Elections*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, ¶ 58, quoting *State ex rel. Minus v. Brown*, 30 Ohio St.2d 75, 81, 283 N.E.2d 131 (1972). Here, while the ballot language might have been more comprehensive if it included references to the other decisions listed in the proposed amendment, the omission is not material when considering the amendment as a whole.

{¶ 21} The proposed amendment's grant of rights is expressly nonexhaustive; it says that the individual right conferred by the amendment applies to "one's own reproductive decisions, *including but not limited to*" five specific kinds of decisions, including abortion. (Emphasis added.) The ballot language approved by the ballot board tracks the "including but not limited to" language that is in the amendment. The fact that the ballot language enumerates only abortion does not render it misleading when considering that an additional paragraph of the amendment's text addresses abortion specifically. While the amendment's text enumerates five types of decisions, it provides specific detail relating to only one of them—namely, abortion. Indeed, the amendment describes the circumstances

when abortion may be prohibited and defines "fetal viability"—a term that the amendment uses only in its provision concerning abortion.  Given that the amendment largely concerns when an abortion may or may not be prohibited, the board-approved ballot language's focus on that aspect of the amendment is not misleading.

### 2. *Whom the proposed amendment would restrict*

{¶ 22} Second, relators contend that the ballot language approved by the ballot board "grossly misleads" voters about "the actor to which the Amendment's restrictions would apply."  This issue relates to the following portions of the proposed amendment and ballot language:

| **Proposed Amendment** | B. The State shall not, directly or indirectly, burden, penalize, prohibit, interfere with, or discriminate against either:<br><br>    1. An individual's voluntary exercise of this right or<br>    2. A person or entity that assists an individual exercising this right,<br><br>unless the State demonstrates that it is using the least restrictive means to advance the pregnant individual's health in accordance with widely accepted and evidence-based standards of care.<br><br>* * *<br><br>C. As used in this Section:<br><br>* * * |
| --- | --- |

10

| | |
|---|---|
| | 2.  "State" includes any governmental entity and any political subdivision. |
| **Ballot Language** | The proposed amendment would:<br><br>* * *<br><br>- Prohibit the citizens of the State of Ohio from directly or indirectly burdening, penalizing, or prohibiting abortion before an unborn child is determined to be viable, unless the State demonstrates that it is using the least restrictive means.<br>* * *<br><br>- Only allow the citizens of the State of Ohio to prohibit an abortion after an unborn child is determined by a pregnant woman's treating physician to be viable and only if the physician does not consider the abortion necessary to protect the pregnant woman's life or health; |

{¶ 23} Relators argue that the ballot language's use of the phrase "citizens of the State of Ohio" instead of the "State"—as used and defined in the proposed amendment itself—distorts the amendment's text and meaning.  They argue that by using the phrase "citizens of the State," the ballot language "converts a right held by the citizens against the State into a restriction enforced by the State against the citizens."  Moreover, relators contend that the term "citizens of the State" raises for the average voter questions about how the amendment restricts citizens' rights.

That is, relators argue that the ballot language suggests that the amendment could restrict certain activities of private citizens, such as protesting outside an abortion clinic. Relators also raise the concern that the term could be interpreted to mean that Ohio citizens would be forever barred from proposing by initiative petition future amendments that would limit or restrict abortion.

{¶ 24} In defending the "citizens of the State" phraseology, respondents rely on the bedrock principle found in Ohio Constitution, Article I, Section 2. That provision states: "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary." Thus, respondents posit that it is not misleading to say that the proposed amendment would prohibit "the citizens of the State" from taking certain action, because any action taken by the state through a representative government is necessarily action taken by the citizens of the state. *See State ex rel. Milhoof v. Bd. of Edn*., 76 Ohio St. 297, 307, 81 N.E. 568 (1907) (stating the principle that government "is by the people, through their chosen representatives"). In other words, respondents argue, the "State" and the "citizens of the State" are synonymous from the standpoint of the exercise of governmental power.

{¶ 25} Further, respondents argue, the ballot language contemplates that laws may be passed through citizen initiative. Citizen-initiated statutes may be passed by the General Assembly or be submitted to the voters for approval or rejection under Article II, Section 1b of the Ohio Constitution. Therefore, respondents say, the "citizens of the State" language recognizes that no law may conflict with the Ohio Constitution, whether it be passed by the General Assembly or by citizen initiative. The ballot language therefore informs the voter that passage of the proposed amendment would mean that "the citizens of the State" may not override the constitutional amendment through a citizen-initiated statute.

12

**{¶ 26}** We agree with relators that the term "citizens of the State of Ohio" would be misleading to the average voter. *See Markus v. Trumbull Cty. Bd. of Elections*, 22 Ohio St.2d 197, 203, 259 N.E.2d 501 (1970) (stating that ballot language must "assure a free, intelligent and informed vote by the average citizen affected"). Because of the way the word "citizens" is used, the average voter might interpret the ballot language to mean that the proposed amendment would prohibit individual citizens—i.e., private actors—from taking actions to burden, penalize, or prohibit abortion. This is particularly true when considering the language of the first bullet point quoted above: "*Prohibit the citizens of the State of Ohio* from directly or indirectly burdening, penalizing, or prohibiting abortion before an unborn child is determined to be viable, unless *the State* demonstrates that it is using the least restrictive means." (Emphasis added.) By using "citizens of the State" in the prohibition clause and a different term—"the State"—in the later clause describing who must demonstrate the least restrictive means, the language confusingly suggests that "citizens of the State" means something different than "the State."

**{¶ 27}** Respondents identify no provision of the Ohio Constitution or the Ohio Revised Code that uses "citizens of the State" interchangeably with "the State." The Ohio Constitution does not ever use the phrase "citizens of the State." However, the Constitution does contain provisions that differentiate between government and individual citizens. For example, Article I, Section 2 provides that "political power is inherent *in the people*" and that "[g]overnment is instituted for *their* equal protection and benefit." (Emphasis added.) And in declaring a constitutional limitation on the use of the initiative power to pass constitutional amendments that would work as a restraint of trade, Article II, Section 1e(B)(1) provides that the "[r]estraint of trade or commerce [is] injurious to this state *and its citizens*." (Emphasis added.) Thus, "citizens" and "the State" are not necessarily synonymous in the Ohio Constitution.

**{¶ 28}** Moreover, a search of the Revised Code reveals that the term "citizens of the state" is often used in reference to citizens being the ones for whose benefit the state or local government is required to act, not as persons exercising governmental power. *See*, *e.g.*, R.C. 181.24(A) (Ohio Criminal Sentencing Commission shall recommend a sentencing structure "that is readily understandable by the citizens of the state"); R.C. 1531.04(D) (among the duties of the Division of Wildlife of the Ohio Department of Natural Resources is to "educate, and inform the citizens of the state about conservation"); R.C. 2744.01(C)(1)(b) (defining "governmental function" as a function of a political subdivision that "is for the common good of all citizens of the state"); R.C. 3334.02(A) (creating Ohio's college-savings program "to promote a well-educated and financially secure population to the ultimate benefit of all citizens of the state"); R.C. 5119.37(O) (criminal proceedings may be requested against a community addiction-services provider when "necessary for the protection of the citizens of the state").

**{¶ 29}** Accordingly, the ballot language approved by the ballot board would not accurately tell the voters what they are being asked to vote on. Instead of describing a proposed amendment that would establish a right to carry out reproductive decisions free from *government* intrusion, the ballot language's use of the term "citizens of the State" would mislead voters by suggesting that the amendment would limit the rights of individual citizens to oppose abortion. We therefore agree with relators that the board-approved ballot language's use of the term "citizens of the State" in lieu of "the State" violates the constitutional standard in Article XVI, Section 1 requiring the ballot language "to properly identify the substance of the proposal."

### 3. The right to continue a pregnancy

**{¶ 30}** Third, relators argue that the ballot language approved by the ballot board is misleading about whether the proposed amendment protects a woman's

14

right to *continue* a pregnancy. According to relators, the ballot language implies that if an individual *wants to proceed* with a pregnancy against medical advice, she will not be permitted to do so. This issue relates to the following portions of the amendment and ballot language:

| **Proposed Amendment** | A. Every individual has a right to make and carry out one's own reproductive decisions, including but not limited to decisions on:<br><br>* * *<br><br>    3. continuing one's own pregnancy;<br><br>* * *<br><br>B. The State shall not, directly or indirectly, burden, penalize, prohibit, interfere with, or discriminate against either:<br><br>    1. An individual's voluntary exercise of this right * * *<br><br>* * *<br><br>However, abortion may be prohibited after fetal viability. But in no case may such an abortion be prohibited if in the professional judgment of the pregnant patient's treating physician it is necessary to protect the pregnant patient's life or health. |

| Ballot Language | The proposed amendment would: |
|---|---|
| | * * * |
| | • Prohibit the citizens of the State of Ohio from directly or indirectly burdening, penalizing, or prohibiting abortion before an unborn child is determined to be viable, unless the State demonstrates that it is using the least restrictive means. |
| | * * * |
| | • Only allow the citizens of the State of Ohio to prohibit an abortion after an unborn child is determined by a pregnant woman's treating physician to be viable and only if the physician does not consider the abortion necessary to protect the pregnant woman's life or health; and |
| | • Always allow an unborn child to be aborted at any stage of the pregnancy, regardless of viability if, in the treating physician's determination, the abortion is necessary to protect the pregnant woman's life or health. |

{¶ 31} Whereas the proposed amendment's text confers "a right to make and carry out one's own reproductive decisions," relators contend that the ballot language suggests that the physician's decision may override the patient's wishes. That is, relators argue that the ballot language implies that a pregnant woman could

16

be forced to obtain an abortion she does not want if her treating physician deems an abortion necessary to protect her life or health.

**{¶ 32}** This argument lacks merit because it is an inaccurate characterization of the ballot language. The ballot language says that the proposed amendment would always *allow* an abortion when a physician decides that an abortion is necessary to protect the life or health of the pregnant woman, even after viability. The language does not imply that the pregnant woman would be *required* to obtain an abortion. The ballot language is more naturally understood as meaning that the pregnant woman would be allowed to obtain a postviability abortion if necessary to protect her life or health.

**{¶ 33}** Accordingly, we conclude that the ballot language approved by the ballot board does not mislead voters about an individual's right to continue one's own pregnancy.

### 4. Physician's discretion

**{¶ 34}** Fourth, relators argue that the ballot language approved by the ballot board "misleads voters about the degree of a physician's discretion." This issue relates to the following portions of the amendment and ballot language:

| Proposed Amendment | C. As used in this Section:<br><br>1. "Fetal viability" means "the point in a pregnancy when, in the professional judgment of the pregnant patient's treating physician, the fetus has a significant likelihood of survival outside the uterus with reasonable measures. This is determined on a case-by-case basis." |
|---|---|
| Ballot Language | The proposed amendment would: |

17

| | * * *<br><br>• Grant a pregnant woman's treating physician the authority to determine, on a case-by-case basis, whether an unborn child is viable; |
|---|---|

**{¶ 35}** According to relators, the ballot language is misleading because it "suggests a physician has entirely unfettered authority to determine fetal viability as the physician sees fit in each particular case." In fact, according to relators, the proposed amendment's language constrains a physician's discretion by defining specifically what "fetal viability" means and by requiring the physician to exercise professional judgment in deciding whether the definition is met on a case-by-case basis. By omitting the amendment's definition of "fetal viability" and the requirement that a physician exercise professional judgment, relators argue, the ballot language falsely suggests that physicians have unfettered discretion when making viability determinations.

**{¶ 36}** The ballot language's statement that a pregnant woman's treating physician has the authority to determine viability "on a case-by-case basis" is an accurate summary of the proposed amendment's text. That the ballot language does not specify that a physician must exercise professional judgment does not render the ballot language inaccurate, misleading, deceptive, or fraudulent. To accept relators' argument would assume that voters would not know that physicians exercise professional judgment. But this assumption defies common experience: the average voter who seeks a physician's assistance does so *because* the physician exercises professional judgment. It is therefore not surprising that Ohio law requires physicians to meet professional standards of care, to safeguard the expectation that they will exercise professional judgment. *See* R.C. 4731.22(B)(6) (subjecting physicians to discipline for departing from the "minimal standards of care of similar practitioners under the same or similar circumstances") and (B)(18)

18

(subjecting physicians to discipline for violating ethical codes of national professional associations); *Bouquett v. Ohio State Med. Bd.*, 123 Ohio App.3d 466, 473, 704 N.E.2d 583 (10th Dist.1997) ("R.C. 4731.22(B) was enacted under the state's police powers in order to protect the public's safety and welfare").

{¶ 37} For these reasons, the ballot language approved by the ballot board does not mislead voters about the discretion granted to physicians in the proposed amendment.

### 5. *How the proposed amendment would limit state regulation*

{¶ 38} Fifth, relators argue that the ballot language approved by the ballot board misleads voters about "the circumstances in which the State may regulate reproductive decision-making." Relators' argument focuses on the differences between how the proposed amendment's text and the ballot language use the term "least restrictive means." This issue relates to the following portions of the amendment and ballot language:

| Proposed Amendment | B. The State shall not, directly or indirectly, burden, penalize, prohibit, interfere with, or discriminate against either: <br><br>     1. An individual's voluntary exercise of this right or <br>     2. A person or entity that assists an individual exercising this right, <br><br> unless the State demonstrates that it is using the least restrictive means to advance the pregnant individual's health in accordance with widely accepted and evidence-based standards of care. |
| --- | --- |
| Ballot Language | The proposed amendment would: |

> * * *
>
> - Prohibit the citizens of the State of Ohio from directly or indirectly burdening, penalizing, or prohibiting abortion before an unborn child is determined to be viable, unless the State demonstrates that it is using the least restrictive means;

{¶ 39} Relators argue that the proposed amendment's text permits state interference with an individual's right to make and carry out reproductive decisions so long as the state uses the "least restrictive means to advance the pregnant individual's health in accordance with widely accepted and evidence-based standards of care." Relators argue that the ballot language does not explain what interest the least restrictive means must advance to be valid.

{¶ 40} For their part, respondents argue that the ballot language has the "sensical and ordinary meaning" that the state "cannot burden, penalize, or prohibit abortion prior to viability unless it does so by means that are the least restrictive *on the pregnant woman.*" (Emphasis added.) In other words, even though the ballot language does not specify that the phrase "least restrictive means" applies to the pregnant woman's health, respondents argue that the language makes sense only if that is the case. But respondents do not explain how a voter would naturally read the phrase "least restrictive means" as applying to the pregnant woman, much less the pregnant woman's health.

{¶ 41} However, whether the ballot board could have employed *better* language is not the issue before us. "[T]he sole issue is whether the board's approved ballot language 'is such as to mislead, deceive, or defraud the voters.'" *Voters First*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, at ¶ 26, quoting Ohio Constitution, Article XVI, Section 1; *see also Bailey*, 67 Ohio St.2d at 519, 426 N.E.2d 493. Thus, the ballot board's language is not invalid simply

because this court "might have used different words to describe the language used in the proposed amendment," *Bailey* at 519. The ballot language approved by the ballot board accurately conveys that if the amendment is approved by the voters, previability abortions generally may not be prohibited. While a description of what the "least restrictive means" applies to would be helpful, its absence does not mislead, deceive, or defraud voters.

### C. Is the Ballot Language Improperly Argumentative?

{¶ 42} When assessing ballot language under Article II, Section 1g of the Ohio Constitution, this court also considers whether the language is improperly argumentative in favor of or against the issue. *One Person One Vote*, __ Ohio St.3d __, 2023-Ohio-1928, __ N.E.3d __, at ¶ 8; *see also Voters First* at ¶ 26, quoting *Bailey* at 519. Relators argue that the ballot language attempts to persuade voters to oppose the proposed amendment by using the term "unborn child" instead of "fetus," the term used in the proposed amendment's text.

{¶ 43} Relators argue that the term "unborn child" is improperly argumentative because it injects the ballot-board majority's "ethical judgment or personal view" into the ballot language. According to relators, "[o]ne's judgment about the developmental stage at which the ethical status of 'unborn child' attaches has obvious implications for whether and how one believes abortion should be regulated." Relators argue that the terms "fetus" or "fetal viability," which appear in the proposed amendment's text, are scientifically accurate and do not carry the same moral judgment as "unborn child."

{¶ 44} We reject relators' argument. Importantly, relators do not argue that the term "unborn child" is factually inaccurate. To the contrary, their argument asserts that "unborn child" is a divisive term that elicits a moral judgment whereas the terms "fetus" and "fetal viability" are more neutral and scientific. But this argument does not establish that the ballot board's language constitutes improper persuasion. "[I]f ballot language is factually accurate and addresses a subject that

21

is in the proposed amendment itself, it should not be deemed argumentative." *State ex rel. Cincinnati Action for Hous. Now v. Hamilton Cty. Bd. of Elections*, 164 Ohio St.3d 509, 2021-Ohio-1038, 173 N.E.3d 1181, ¶ 26, citing *State ex rel. Cincinnati for Pension Reform v. Hamilton Cty. Bd. of Elections*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, ¶ 49.

{¶ 45} Relators also contend that the "ballot language improperly attempts to persuade voters by using absolute terms where they do not apply." They point to the ballot language stating that the proposed amendment would:

- *Only* allow the citizens of the State of Ohio to prohibit an abortion after an unborn child is determined by a pregnant woman's treating physician to be viable and *only* if the physician does not consider the abortion necessary to protect the pregnant woman's life or health; and
- *Always* allow an unborn child to be aborted at any stage of pregnancy, regardless of viability if, in the treating physician's determination, the abortion is necessary to protect the pregnant woman's life or health.

(Emphasis added.) Relators argue that by twice using the adverb "only," the ballot language "implies that the Amendment imposes unreasonably strict limits on state authority" to prohibit abortion after viability. Likewise, by leading with the term "always" in the next bullet point, relators argue, the language gives the impression that the amendment would allow abortions before and after viability without any restrictions. Relators also argue that the second bullet point quoted above repeats information addressed in other parts of the ballot language and was therefore included only to motivate voters to vote against the amendment.

{¶ 46} We disagree with relators because the ballot language is factually accurate. While relators do not like the way in which the language is phrased, the structure of the statements is not improperly argumentative. As stated above, this court will not deem language to be argumentative when it is accurate and addresses a subject in the proposed amendment. *Cincinnati Action for Hous. Now* at ¶ 26.

### D. A Limited Writ is Warranted

{¶ 47} In *One Person One Vote*, this court stated that it examines any "defects [in ballot language] as a whole and determine[s] whether their cumulative effect violates the constitutional standard." __ Ohio St.3d __, 2023-Ohio-1928, __ N.E.3d __, at ¶ 8. Relators argue that the cumulative effect of the defects they identify are such that the ballot language is constitutionally defective.

{¶ 48} For the reasons stated above, we conclude that the term "citizens of the State" is misleading in that it suggests to the average voter that the proposed amendment would restrict the actions of individual citizens instead of the government. While this is the lone defect in the ballot language, its effect violates the constitutional standard. Because of this defect, the ballot language as approved by the ballot board would not accurately tell the voters what they are being asked to vote on. We therefore grant a limited writ of mandamus ordering the ballot board and the secretary of state to reconvene forthwith and adopt ballot language that accurately conveys that the amendment regulates the ability of the state, as defined by the amendment, to burden, penalize, or prohibit abortion. The writ is denied in all other respects; in particular, in response to relators' request that the ballot board be ordered to adopt the amendment's full text as the ballot language, it is noted that the Ohio Constitution commits the drafting of ballot language to the ballot board and does not require that the ballot contain the full text of a proposed amendment. *See* Ohio Constitution, Article XVI, Section 1, paragraph 2.

## IV. CONCLUSION

{¶ 49} By using the term "the citizens of the State," the ballot language approved by the ballot board might mislead the voters into thinking that the proposed amendment regulates nongovernmental conduct, when it does not. We therefore grant a limited writ of mandamus ordering Secretary of State LaRose and the Ohio Ballot Board to reconvene forthwith and adopt ballot language that accurately conveys that the proposed amendment limits the ability of the state, as defined by the amendment, to burden, penalize, or prohibit abortion. The writ is denied in all other respects.

Writ granted in part
and denied in part.

FISCHER, J., concurs.

DONNELLY, J., concurs, with an opinion.

STEWART, J., concurs in part and dissents in part, with an opinion.

BRUNNER, J., concurs in part and dissents in part, with an opinion.

DETERS, J., concurs in part and dissents in part, with an opinion joined by KENNEDY, C.J., and DEWINE, J.

————————————

**DONNELLY, J., concurring.**

{¶ 50} Here, respondent Ohio Ballot Board has one duty: to approve the language that will appear on the November election ballot as Issue 1. The statutory scheme that governs that duty grants the board two options: provide the full text or a condensed text. *See* R.C. 3505.06(E). *But see* Ohio Constitution, Article XVI, Section 1 (which states, among other things, that the "ballot language need not contain the full text nor a condensed text of the proposal").

{¶ 51} It's unfortunate that advocacy seems to have infiltrated a process that is meant to be objective and neutral. *See* opinion concurring in part and dissenting in part of Brunner, J. (describing how some members of the board are using their

position on the board to skew the language of the amendment to advocate for the position they favor). Nevertheless, I am confident that the voters will be fully informed about the proposed amendment when they enter the voting booth.

_____

**STEWART, J., concurring in part and dissenting in part.**

{¶ 52} Respondent Ohio Ballot Board has a clear and defined constitutional duty—prescribe ballot language that properly identifies the substance of the proposal to be voted on. Ohio Constitution, Article XVI, Section 1. The board failed to meet that duty here. Instead, it crafted partisan ballot language designed to do any number of things, but not simply designed to do its job—that is, inform voters of the substance of the proposed amendment. The proposed amendment in this case is clear and succinct and uses neutral language to accurately describe the full scope of rights the amendment would protect. There is no reason whatsoever for the board to use any language other than what is included in the proposed amendment. In fact, the board's rendition is more wordy and less clear, and it appears to be politically charged. As evidenced by the multiple opinions generated by this case, the board's language does anything but simply identify the substance of the proposed amendment. I concur in the portion of the judgment that grants the requested writ of mandamus in part and orders respondents to change the ballot language from "the citizens of the State of Ohio" to "the State of Ohio," but I would go further and grant the requested writ in its entirety. Therefore, I concur in part and dissent in part.

_____

**BRUNNER, J., concurring in part and dissenting in part.**

{¶ 53} The power of initiative petition to amend the Ohio Constitution is the most significant power of self-governance held by the people. *See State ex rel. One Person One Vote v. Ohio Ballot Bd.*, ___ Ohio St.3d ___, 2023-Ohio-1928, ___ N.E.3d ___, ¶ 40 (Brunner, J., concurring in part and dissenting in part). This power grants to the people of Ohio "the ultimate decision on what the Constitution

should say and how it should say it," *State ex rel. DeBlase v. Ohio Ballot Bd.*, ___ Ohio St.3d ___, 2023-Ohio-1823, ___ N.E.3d ___, ¶ 39 (Kennedy, C.J., concurring in judgment only). The Ohio Constitution explicitly prioritizes this form of direct democracy: "The *first* aforestated power reserved by the people is designated the initiative." (Emphasis added.) Ohio Constitution, Article II, Section 1a.

**{¶ 54}** Unquestionably, what our Constitution says—the actual words used—is paramount in understanding the rights it confers and protects. Discerning the intent of the people is the " 'polestar in the construction of constitutional * * * provisions,' " *State ex rel. Wallace v. Celina*, 29 Ohio St.2d 109, 111-112, 279 N.E.2d 866 (1972), quoting *Castleberry v. Evatt*, 147 Ohio St. 30, 67 N.E.2d 861 (1946), paragraph one of the syllabus. Therefore, when asked to review ballot language for a proposed constitutional amendment, this court must ensure that voters know what they are being asked to vote on.

**{¶ 55}** A majority of respondent Ohio Ballot Board's members[2] shirked their responsibility to uphold this principle. They obfuscated the *actual* language of the proposed state constitutional amendment by substituting their own language and creating out of whole cloth a veil of deceit and bias in their desire to impose their views on Ohio voters about what they think is the substance of the proposed amendment. And they did this by completely recrafting simple and straightforward amendment language into a version that contains more words than the amendment itself. The evidence in the record makes clear that it was their *intent* to use their positions on the board to influence the outcome of the election with the ballot language the board certified for the proposed amendment.

---

2. The individual members of the ballot board are respondents Secretary of State Frank LaRose (also the chair of the board), Senator Theresa Gavarone, Senator Paula Hicks-Hudson, William Morgan, and Representative Elliot Forhan.

{¶ 56} The board's decision threatens to divest Ohioans of their fundamental right to decide what the Constitution should say and how it should be said—a right held by the people of Ohio, in whom "[a]ll political power is inherent," Ohio Constitution, Article I, Section 2. For a constitutional amendment is just that—*words* that are added or changed within the state's most elemental and basic governing document. By completely rewriting the proposed amendment into ballot language that is wordier and less substantive (e.g., the ballot language does not mention contraceptives, miscarriage, or the continuation of a pregnancy) than the amendment itself, the board miserably fails to fairly present the issue to Ohio voters according to its constitutional duty.

{¶ 57} And while I agree with the lead opinion regarding the technical problems with the ballot language substituting "citizens of the State of Ohio" for "the State," I would go further and would find that there is clear evidence in the record that the board has defrauded the voters, attempting to deprive them of their right of self-determination in amending their Constitution in the manner set forth in Article II, Section 1a.

{¶ 58} As the lead opinion states:

> Article XVI, Section 1 of the Ohio Constitution requires that the ballot language "properly identify the substance of the proposal to be voted upon." This court "shall not" hold that ballot language is invalid "unless it is such as to mislead, deceive, or defraud the voters." *Id.* Applying these constitutional requirements, we examine whether the language tells voters what they are being asked to vote on and whether the language is impermissibly argumentative, either in favor of or against the issue. *State ex rel. One Person One Vote v. Ohio Ballot Bd*., __ Ohio St.3d __, 2023-Ohio-1928, __ N.E.3d __,

¶ 8, citing *State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981).

Lead opinion, ¶ 12; *see also* Ohio Constitution, Article XVI, Section 1 and Article II, Section 1g. The board has created misleading, argumentative language that goes beyond the full text of the proposed amendment, both structurally and substantively. The prescribed ballot language does not condense or accurately summarize the full text of the proposed amendment, and the evidence in the record shows that the ballot language was informed and motivated by an effort to defeat the initiative.

{¶ 59} We are duty bound to invalidate the language and require new, constitutional ballot language. Because the language of the proposed amendment is clear and straightforward, there is no need to interpret, reword, or embellish it. It says what it says. Ohioans deserve the right to read it on their ballots. That a voter may find a copy of the proposed amendment's language hanging on a wall in his or her polling place is not adequate or sufficient. Because "[t]he powers of initiative and referendum should be liberally construed to effectuate the rights reserved," *State ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 5, 591 N.E.2d 1186 (1992), the board has failed Ohio voters, who should have the right to have placed before them on their ballots the actual text of the proposed amendment.

## I. Background

{¶ 60} In July 2023, relators, Ohioans United for Reproductive Rights and several individual members of the committee that circulated the petition to propose Issue 1 ("the committee"),[3] submitted signatures from over 700,000 Ohioans in support of a proposed amendment to Article I of the Ohio Constitution. The petition specified that the proposed amendment was titled "The Right to Reproductive

---

3. Relators David Hackney, Nancy Kramer, Jennifer McNally, Ebony Speakes-Hall, and Aziza Wahby are individual members of the committee that circulated the initiative petition to propose Issue 1.

Freedom with Protections for Health and Safety" and included the following proposed language, which constitutes the entire proposed amendment and which, if adopted by the voters, would be added to the Ohio Constitution:

> A. Every individual has a right to make and carry out one's own reproductive decisions, including but not limited to decisions on:
>
> 1. contraception;
> 2. fertility treatment;
> 3. continuing one's own pregnancy;
> 4. miscarriage care; and
> 5. abortion.
>
> B. The State shall not, directly or indirectly, burden, penalize, prohibit, interfere with, or discriminate against either:
>
> 1. An individual's voluntary exercise of this right or
> 2. A person or entity that assists an individual exercising this right,
>
> unless the State demonstrates that it is using the least restrictive means to advance the pregnant individual's health in accordance with widely accepted and evidence-based standards of care.
>
> However, abortion may be prohibited after fetal viability. But in no case may such an abortion be prohibited if in the professional judgment of the pregnant patient's treating physician it is necessary to protect the pregnant patient's life or health.
>
> C. As used in this Section:
>
> 1. "Fetal viability" means "the point in a pregnancy when, in the professional judgment of the pregnant patient's treating

physician, the fetus has a significant likelihood of survival outside the uterus with reasonable measures. This is determined on a case-by-case basis."

    2. "State" includes any governmental entity and any political subdivision.

    D. This Section is self-executing.

The foregoing proposed amendment language is 197 words.[4]

{¶ 61} On August 24, 2023, the Ohio Ballot Board met for the purpose of carrying out its duties under Article XVI, Section 1 of the Ohio Constitution, which specifies that "[t]he ballot language for such proposed amendments shall be prescribed by a majority of the Ohio ballot board." The board, in a three-to-two vote, retitled the proposed amendment "A Self-Executing Amendment Relating to Abortion and Other Reproductive Decisions"[5] and adopted the following ballot language to explain what the proposed amendment would do:

• Establish in the Constitution of the State of Ohio an individual right to one's own reproductive medical treatment, including but not limited to abortion;

• Create legal protections for any person or entity that assists a person with receiving reproductive medical treatment, including but not limited to abortion;

---

4. This word count does not include the subsection numbering or lettering, and it treats hyphenated words as separate words.

5. For purposes of comparison, the two titles may be easily compared here:
- Petitioners' proposed title: "The Right to Reproductive Freedom with Protections for Health and Safety";
- Ohio Ballot Board's title: "A Self-Executing Amendment Related to Abortion and Other Reproductive Decisions."

• Prohibit the citizens of the State of Ohio from directly or indirectly burdening, penalizing, or prohibiting abortion before an unborn child is determined to be viable, unless the State demonstrates that it is using the least restrictive means;

• Grant a pregnant woman's treating physician the authority to determine, on a case-by-case basis, whether an unborn child is viable;

• Only allow the citizens of the State of Ohio to prohibit an abortion after an unborn child is determined by a pregnant woman's treating physician to be viable and only if the physician does not consider the abortion necessary to protect the pregnant woman's life or health; and

• Always allow an unborn child to be aborted at any stage of pregnancy, regardless of viability if, in the treating physician's determination, the abortion is necessary to protect the pregnant woman's life or health.

If passed, the amendment will become effective 30 days after the election.

The foregoing ballot language is 201 words.[6]

**{¶ 62}** The committee had asked in a letter for the board to adopt the full text of the proposed amendment as it had appeared on the petitions, which over 700,000 Ohioans signed. Two members of the board moved to take that action, but the motion was defeated three to two. Two other members of the board explained

---

6. Again, this word count does not include the subsection bulleting, and it treats hyphenated words as separate words.

why they would not endorse placing the full text of the proposed amendment on the ballot. Respondent Senator Theresa Gavarone made the following statement:

The language of this amendment is written very broadly. And that's no mistake on the part of the drafters. This summary accurately reflects that really broad language of the amendment, and that's what we're tasked with here today.

No one should be fooled by the clever writing of this proposed amendment. It's designed to be broad, so broad that should it pass, it is unequivocally true that access to painful, late-term abortions will be written into Ohio's Constitution.

This amendment is a bridge too far, even for pro-choice women. Should this be inserted into our founding document, Ohio citizens will allow an abortionist, a person who profits from performing an abortion, to be the sole determiner if the "health of the mother" is at risk.

Health of the mother has been defined by the U.S. Supreme Court in *Doe v. Bolton* [410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973)] to include all factors, physical, emotional, psychological, familial, and the woman's age relevant to the wellbeing of the mother.

If the abortionist says the health of the mother is at risk, even if there is scant evidence to support that medical determination, then fully healthy, viable babies at seven, eight, and even nine months can and absolutely will be aborted.

And all of that is before we get to the elimination of the basic health and safety standards that the general assembly has implemented over many decades, such as requiring that abortions be

performed in person by a licensed doctor who has the ability to transfer a woman to a hospital if something goes wrong with the abortion and also the assault on parental rights that this proposed amendment includes.

At this point, board member and respondent Senator Paula Hicks-Hudson requested a point of order, and the chair of the board, respondent Secretary of State Frank LaRose, allowed Senator Gavarone to continue:

The truth about this dangerous proposed amendment is hidden by overly broad language. As a woman and a mother I consider it an abomination that we're even talking about amending our constitution to allow for painful, late-term abortions. An abomination.

This is a dangerous amendment that I'm going to fight tirelessly to defeat. But that's not why we're here today.

We're here to create ballot language that accurately describes the proposed amendment as written.

I wish the language would've been more specific to the voters as to what this proposed amendment actually means, and the disastrous consequences on women and families, as I've been urging up through today.

But I'm thankful to have played a part in setting the record straight. And I'm proud to help deliver the truth to Ohioans about this dangerous proposal.

{¶ 63} Board chair Secretary LaRose also commented as to why the full text of the amendment should not be placed on the ballot:

And of course the written text of a 250-plus word Constitutional Amendment creates what I consider a number of very substantial changes to [the] Ohio Constitution.

We tried to summarize that the best way we can and make it a clear statement here in the ballot language of what this amendment would actually do.

And then, of course, for any voter who wishes to read the ballot language in its entirety, it's presented right there at every polling location in the state, as well.

Relators filed this mandamus action seeking to invalidate the language created and adopted by the board. They claim that the ballot language is defective because it misleads the voters and amounts to improper argument against the proposed amendment.

{¶ 64} Relators ask that we invalidate the board's language and issue a writ of mandamus ordering Secretary LaRose to reconvene the board and directing the board to either adopt the full text of the proposed amendment or prescribe lawful ballot language correcting the specified defects.

## II. Analysis

### A. *Review of ballot language*

{¶ 65} When a party challenges ballot language prescribed by the board, this court may not invalidate the language unless we find that it "is such as to mislead, deceive, or defraud the voters." Ohio Constitution, Article XVI, Section 1. When applying this constitutional directive, we look to whether the board engaged in fraud or corruption, abused its discretion, or clearly disregarded applicable law in prescribing the ballot language. *One Person One Vote*, __ Ohio St.3d __, 2023-Ohio-1928, __ N.E.3d __, at ¶ 7; *see State ex rel. Ohioans for Secure*

*& Fair Elections v. LaRose*, 159 Ohio St.3d 568, 2020-Ohio-1459, 152 N.E.3d 267, ¶ 14. The relator must establish that it is entitled to a writ through clear and convincing evidence. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 57.

{¶ 66} Recently, in upholding another decision of the board involving this same initiative, we explained that "[a]n abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude." *DeBlase*, __ Ohio St.3d __, 2023-Ohio-1823, __ N.E.3d __, at ¶ 27. With respect to following the applicable law, Ohio Constitution, Article XVI, Section 1 (as referred to in Article II, Section 1g) requires the board to "properly identify the substance of the proposal to be voted upon." We have explained that the ballot language " 'must fairly and accurately present the question or issue to be decided in order to assure a free, intelligent and informed vote by the average citizen affected.' " *State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981), quoting *Markus v. Bd. of Elections*, 22 Ohio St.2d 197, 259 N.E.2d 501, paragraph four of the syllabus.

{¶ 67} Finally, our analysis is premised on the fundamental principle that voters have the right to know what they are being asked to vote on. *See Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 141, 519 N.E.2d 347 (1988), citing *Bailey* at 519. Therefore, language that is in the nature of a persuasive argument in favor of or against a proposed amendment is prohibited. *Id.*, citing *Beck v. Cincinnati*, 162 Ohio St. 473, 475, 124 N.E.2d 120 (1955).

{¶ 68} Under these principles of review, the record here shows clearly and convincingly that the ballot board disregarded applicable law and acted unreasonably and arbitrarily when it prescribed ballot language that neither condenses the proposed amendment nor presents the voters with a fair and accurate description of the issue they are being asked to vote on. The clear disdain of the majority of the board—which is apparent in the record—for the substance of the amendment evidences an unconscionable attitude resulting in an abuse of discretion

in prescribing ballot language that is a complete rewrite of the language of the amendment, making the ballot language both misleading and longer than the text of the amendment itself. The board's language is dishonest. It is born of board action motivated by privately held and arbitrary views, not constitutional duty. It should be invalidated in its entirety.

*B. The board's rejection of the full text was unreasonable and arbitrary*

{¶ 69} The clearest and most prudent method of ensuring that voters know what they are being asked to vote on is to place the full text of the proposed amendment on the ballot. Time and again, we have recognized that "[i]n the larger community, in many instances, the only real knowledge * * * voter[s] obtain[] on the issue for which [they are] voting comes when [they] enter[] the polling place and read[] the description of the proposed issue set forth on the ballot." *Schnoerr v. Miller*, 2 Ohio St.2d 121, 125, 206 N.E.2d 902 (1965). Using the full text of the proposed amendment would ensure constitutional compliance, because nothing could more " 'fairly and accurately present the question or issue' " than the full text of the proposed amendment. *See Bailey*, 67 Ohio St.2d at 519, 426 N.E.2d 493, quoting *Markus*, 22 Ohio St.2d 197, 259 N.E.2d 501, at paragraph four of the syllabus.

{¶ 70} As justification for not putting the full text of the proposed amendment on the ballot, the chair of the board suggested that voters may "read the ballot language in its entirety" by seeking it out at a polling location. As noted, that option is inadequate and insufficient, because R.C. 3505.06(E) requires simply this:

> If other than a full text is used, the full text of the proposed question, issue, or amendment together with the percentage of affirmative votes necessary for passage as required by law shall be posted in each polling place in some spot that is easily accessible to the voters.

36

That means that in a polling place, which may contain more than one precinct of up to 1,400 voters per precinct,[7] there is but one copy of the proposed amendment. This should not be the preferred method for voters to have access to the full text of a proposed amendment when the full text can easily be placed on the ballot.

{¶ 71} But here, the board did not identify any reason why the full text *could not* be placed on the ballot. Rather, Secretary LaRose and Senator Gavarone focused on why, in their view, it *should not* be placed on the ballot. Although Article XVI, Section 1 states that the ballot "need not contain the full text nor a condensed text," it is difficult to understand why a substitute text, that is neither full nor condensed, would ever be constitutional. The parties do not offer this court any case in which we have been called on to examine circumstances such as these before now.

{¶ 72} Thus, it behooves us to examine *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, a case in which we invalidated the board's decision to prescribe a condensed text of a proposed amendment as prepared by the secretary of state's staff because the condensed text failed to properly identify the substance of the amendment. The secretary in that case expressed that the full text of the amendment would have been preferred but would have "doubled the cost" of sending mail-in ballots for voters and the state. *Id.* at ¶ 11. We acknowledged that the alternative was a condensed text, explaining that if, instead of using the full text, the board approves condensed text, any omissions may not "affect the fairness or accuracy of the text." *Id.* at ¶ 30. We thus recognized that the actual text is the most accurate ballot language and pointed out that any other version, condensed or not, had to properly identify the substance of the proposed amendment.

---

7. *See* R.C. 3501.18(A); Ohio Secretary of State, "Election Official Manual" 2-45 (Feb. 3, 2021), available at https://www.ohiosos.gov/globalassets/elections/directives/2021/eom/eom_fullversion_2021-02.pdf (accessed Sept. 18, 2023) [https://perma.cc/XJ24-T3P5].

**{¶ 73}** If the most fair and accurate presentation of the issue is the full text of the proposed amendment, why did the board here need to create new language at all? The board's language does not condense the language of the proposed amendment. And there is no indication that the board's chair was concerned about the cost of postage or anything of a practical nature. To protect the inherent political power of the people, we need to examine why the board chose to prescribe not a full text, and not a condensed text, but a different text altogether.

**{¶ 74}** First, Secretary LaRose stated that the amendment (that had been on every part-petition circulated to obtain in excess of 700,000 signatures) created what he considered to be very substantial changes to the Ohio Constitution. He also explained that he had tried to "summarize" the amendment and explain what it "would actually do." But this reasoning is disingenuous, because what the amendment "would actually do" depends more on the actual text than the chair's explanation of it. Simply put, the chair of the board may express his opinion about the amendment when he casts his vote on election day, just like every other Ohioan. But he may not vote to reject placing the full text of the amendment on the ballot in favor of his own language explaining what he believes the amendment "would actually do." Such a decision is arbitrary, unreasonable, and deceitful. His explanation is a pretext for placing his desire to communicate *his views* on the amendment above his constitutional duty to "properly identify the substance of the proposal to be voted upon" pursuant to Article XVI, Section 1.

**{¶ 75}** Another unabashedly opinionated member of the board, Senator Gavarone, went beyond disingenuous and straight into outrageous when she expressed her clear disdain for the substance of the proposed amendment, calling it "dangerous" and "an abomination." The idea that she would "fight tirelessly to defeat" the amendment equates her vote to deny the full text of the proposed amendment with a vote to deny the amendment entirely. Her constitutional duty is

38

to prescribe accurate ballot language—not to argue against the adoption of the proposed amendment. *See Jurcisin*, 35 Ohio St.3d at 141, 519 N.E.2d 347.

{¶ 76} Senator Gavarone either disregarded or misunderstood her duty, stating that the board was tasked to "*create* ballot language that accurately describes the proposed amendment as written." (Emphasis added.) The board is not and never has been tasked with *creating* or *describing* anything. The board's duty is simply to *prescribe* the language for the ballot and to "properly identify the substance of the proposal to be voted upon." Ohio Constitution, Article XVI, Section 1. It has no duty to *create* anything.

{¶ 77} Even if we view Secretary LaRose's and Senator Gavarone's justifications for not adopting the full text in the most benign sense—based on their perception that the amendment is too broadly written—this rationale is arbitrary and unreasonable. The board has no authority to determine how a proposed amendment *should have been* written. Even if it can be said that the drafters wrote the amendment to apply broadly, it is the voters and not the board who decide whether that is what the Constitution should say.

{¶ 78} When the full text of the proposed amendment is used as the ballot language, there can be no doubt that it "properly identif[ies] the substance of the proposal to be voted upon," Ohio Constitution, Article XVI, Section 1. Because "[t]he powers of initiative and referendum should be liberally construed to effectuate the rights reserved," *Hodges*, 64 Ohio St.3d at 5, 591 N.E.2d 1186, we should find that the board offers no plausible, nonargumentative explanation for failing to place the full text of the proposed amendment on the ballot, showing its decision to be arbitrary, unreasonable, and unconscionable.

*C. The board's proposed ballot language is otherwise defective*

{¶ 79} In examining the critical defects raised by relators, I recognize that the board is not required to prescribe ballot language that contains the same "nouns and verbs" that appear in the proposed amendment, *State ex rel. Cincinnati for*

*Pension Reform v. Hamilton Cty. Bd. of Elections*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, ¶ 52.  However, until now, we have applied this principle in the context of reviewing a board's *condensing* of the proposed amendment's language for the ballot, such as in *Cincinnati for Pension Reform*, in which the board had condensed a three-page amendment to six paragraphs.

{¶ 80} When this court examines condensed text, it can evaluate the omissions as compared to the full text.  But this new practice of *explaining* an amendment asks us to compare different versions of what is represented to be the same thing.  We should recognize the inappropriateness in this case of endorsing ballot language that presents a version of the proposed amendment that is not representative of the amendment's actual text, especially in the presence of the abject hostility toward the full text of the proposed amendment that blankets the evidentiary record.

{¶ 81} For the following reasons, I would find that the board's decision was contrary to law because the ballot language it adopted fails to properly identify the substance of the proposal to be voted on and is misleading, argumentative, and deceitful.

### 1.  *The right created by the amendment*

{¶ 82} The proposed amendment establishes the right of every Ohioan to "make and carry out [their] own reproductive decisions."  It specifies that the right includes, but is not limited to, "contraception, fertility treatment, continuing one's own pregnancy, miscarriage care, and abortion."  Conversely, the board's language explains the proposal as establishing a right "to one's own reproductive medical treatment" and omits all the categories specifically included except for abortion.  The board's removal of the enumerated categories could change the voters' understanding about the scope of the rights being conferred.  By the chair's own standards, these omissions do nothing to convey a "clear statement of what this amendment would actually do."

{¶ 83} Consider the voter who is concerned about guaranteeing access to contraception and is not sure about his or her feelings about abortion, or the voter who is concerned about in vitro fertilization and how the use of embryos could be criminalized. The ballot language mentions nothing of these aspects of the proposed amendment. And what about the concerns of physicians who are ethically obligated to provide medical treatment to patients having a miscarriage and at risk of bleeding to death, but who may be prosecuted for providing that medical treatment when the fetus is still viable? There is nothing in the ballot language about miscarriage. Why are these issues left out of the ballot language?

{¶ 84} Because the board's language omits important terms while failing to actually condense or summarize the language at all, the ballot language is misleading and deprives voters of language that properly reflects the substance of the proposed amendment. The board's argumentative justification for crafting this language—language that is different from the proposed amendment's full text—supplies clear and convincing evidence of careful intention that is unreasonable or arbitrary or arises from an unconscionable attitude. *See DeBlase*, ___ Ohio St.3d ___, 2023-Ohio-1823, ___ N.E.3d ___, at ¶ 27.

### 2. *"The State" vs. "the citizens of the State of Ohio"*

{¶ 85} Secretary LaRose and Senator Gavarone claimed that the full text of the amendment was broad and that the board's language was necessary to clarify the amendment for the voters. But the board's substitution of "the citizens of the State of Ohio" for "the State" is confusing, inaccurate, and unnecessary. The full text of the amendment prohibits "the State" from burdening or interfering with the rights created therein. The full text also provides a definition of the "State," so there can be no question of what entity is being restricted.

{¶ 86} The board's language is confusing and inaccurate and insinuates that citizens as individuals, not the government, are prohibited from interfering with the

rights being created. This language is confusing, if not outright misleading—especially when the actual text is available, concise, and clear.

### 3. *"Fetus" vs. "unborn child"*

**{¶ 87}** The term "unborn child" is unnecessary and argumentative against the amendment. Given the statements made during the board's hearing and in the absence of any reasonable or rational explanation, it is unsurprising that the board changed the terminology to fit the majority of the board's stance against the amendment, rather than either presenting as ballot language the full text of the proposed amendment or simply condensing it.

### 4. *The board's title of the amendment is misleading*

**{¶ 88}** Relators titled the amendment "The Right to Reproductive Freedom with Protections for Health and Safety." The board retitled the amendment "A Self-Executing Amendment Relating to Abortion and Other Reproductive Decisions." The board's language again focuses on only one category of the rights protected, that being the most contentious: abortion. Further, the board's title adds the term "self-executing," which appears at the end of the proposed amendment's text; above the title, it does nothing to explain the substance of the amendment and would be confusing to the average voter. Given the backdrop of hostility the board has toward the substance of the amendment, these changes are misleading.

### III. Conclusion

**{¶ 89}** The Ohio Ballot Board's decision to adopt ballot language that is different from the language in the proposed amendment, that is not condensed, that is wordier than the actual text of the proposed amendment, and that does not properly represent the substance of the proposal was an abuse of discretion and contrary to law. The board should be ordered to reconvene and adopt constitutional ballot language, which should be the full text of the amendment, especially under the facts presented in this case. Because the majority does not agree, except to

42

change "the citizens of the State of Ohio" to "the State," I respectfully concur in part and dissent in part.

_____

**DETERS, J., concurring in part and dissenting in part.**

{¶ 90} I agree with much of the lead opinion's analysis. Where I part ways, however, is with the opinion's characterization of respondent Ohio Ballot Board's use of the term "citizens of the State." The majority concludes that the term is misleading. It is not. Nothing in the ballot language would lead the average voter to understand that the proposed amendment would curb his or her individual right to object to abortion. So while I concur with the majority's judgment denying the writ in most respects, I dissent from the majority's judgment granting a limited writ to relators, Ohioans United for Reproductive Rights and several individual members of the committee that circulated the petition to propose the constitutional amendment at issue.

{¶ 91} The Ohio Constitution constrains this court's review of ballot language: "ballot language shall not be held invalid unless it is such as to mislead, deceive, or defraud the voters." Article XVI, Section 1, Ohio Constitution. "When assessing ballot language, we typically examine whether the language tells voters what they are being asked to vote on and whether the language impermissibly amounts to persuasive argument for or against the issue." *State ex rel. One Person One Vote v. Ohio Ballot Bd.*, __ Ohio St.3d __, 2023-Ohio-1928, __ N.E.3d __, ¶ 8.

{¶ 92} The lead opinion correctly concludes that most of relators' claims that the ballot language is misleading are without merit. And it determines that the language is not improperly argumentative against the amendment. Where the opinion goes wrong is in concluding that the use of the term "citizens of the State" is misleading because the term "suggest[s] that the amendment would limit the

rights of individual citizens to oppose abortion." Lead opinion, ¶ 29. Read in context, the term does nothing of the sort.

{¶ 93} The term that the majority finds misleading appears in two bullet points in the ballot board's language:

• Prohibit the citizens of the State of Ohio from directly or indirectly burdening, penalizing, or prohibiting abortion before an unborn child is determined to be viable, unless the State demonstrates that it is using the least restrictive means.

\* \* \*

• Only allow the citizens of the State of Ohio to prohibit an abortion after an unborn child is determined by a pregnant woman's treating physician to be viable and only if the physician does not consider the abortion necessary to protect the pregnant woman's life or health[.]

{¶ 94} It is notable that both bullet points refer to "citizens" rather than "a citizen." The word choice can be contrasted with other phrases that describe the effect of the proposed amendment on individuals: "a pregnant woman's treating physician" is granted authority; a determination is to be made whether "an unborn child" is viable; "the pregnant woman's life or health" is protected. When the phrase "citizens of the State" is contrasted with those phrases, it seems unlikely that a voter would conclude that the bullet points using the term "citizens of the State" describe the amendment's effect on his or her *individual* rights.

{¶ 95} Moreover, the actions that the ballot language explains would be prohibited or permitted are not actions that can be taken by an individual. In the first bullet point quoted above, the "citizens of the State" are prohibited from

"burdening, penalizing, or prohibiting abortion." A voter would not understand that language to mean that he or she currently had a right to burden, penalize, or prohibit abortion and that the right would be taken away by the amendment. And if there were any confusion on this point, the latter half of the bullet point—"unless the State demonstrates that it is using the least restrictive means"—makes clear that the burdening, penalizing, or prohibiting referred to involve state action.

{¶ 96} Likewise, the second bullet point quoted above speaks to allowing "citizens of the State" to prohibit an abortion in limited circumstances. A voter would not think this means that so long as the amendment doesn't pass, he or she possesses an individual right to prohibit an abortion. The majority's conclusion that the language "suggests," lead opinion at ¶ 26, any limit on the right of an individual voter to oppose abortion is simply not supported by the words chosen by the ballot board.

### Conclusion

{¶ 97} This court's role in reviewing ballot language is constrained by the Ohio Constitution. The Ohio Ballot Board's language does not mislead, deceive, or defraud voters. Because the majority concludes otherwise, I respectfully concur in part and dissent in part.

KENNEDY, C.J., and DEWINE, J., concur in the foregoing opinion.

———————————

McTigue & Colombo, L.L.C., and Donald J. McTigue; and Elias Law Group, L.L.P., and Ben Stafford, Emma Olson Sharkey, and Samuel T. Ward-Packard, for relators.

Dave Yost, Attorney General, and Julie M. Pfeiffer, Ann Yackshaw, Michael A. Walton, and Stephen Tabatowski, Assistant Attorneys General, for respondents.

———————————